IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMAL TARHUNI,                                    3:13-cv-00001-BR

                    Plaintiff,                    OPINION AND ORDER

        v.

ERIC HOLDER, in his official capacity
as Attorney General of the United
States; FEDERAL BUREAU OF
INVESTIGATION; JAMES B. COMEY, in his
official capacity as Director of the
Federal Bureau of Investigation; UNITED
STATES DEPARTMENT OF STATE; JOHN KERRY,
in his official capacity as Secretary
of State; FBI TERRORISM SCREENING
CENTER; TIMOTHY HEALY, in his official
capacity as Director of the FBI
Terrorism Screening Center; BRIAN ZINN,
an employee of the Federal Bureau of
Investigation, in his individual
capacity; HORACE THOMAS, an employee of
the Federal Bureau of Investigation, in
his individual capacity,

                    Defendants.

**STEVEN GOLDBERG**
205 S.E. Spokane St.
Suite 300
Portland, OR 97202
(503) 445-4622

**THOMAS H. NELSON**
Thomas H. Nelson & Associates
P.O. Box 1211
Welches, OR 97067
(503) 622-3262

        Attorneys for Plaintiff

**BRIGHAM J. BOWEN**
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 514-6289

                Attorneys for Defendants Eric Holder, Federal
                Bureau of Investigation, James B. Comey,
                United States Department of State, John
                Kerry, FBI Terrorism Screening Center, and
                Timothy Healy

**REGINALD M. SKINNER**
Trial Attorney
United States Department of Justice
Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, DC 20044
(202) 616-4314

                Attorneys for Defendants Brian Zinn and Horace
                Thomas


**BROWN, Judge.**

        This matter comes before the Court on the following Motions:

1. Motion (#20) to Dismiss for Failure to State a Claim and for Lack of Jurisdiction filed by Defendants FBI Terrorism Screening Center, Federal Bureau of Investigation, Timothy Healy, Eric Holder, John Kerry, James B. Comey, and United States Department of State (collectively referred to as Official Capacity Defendants), and

2. Motion (#23) to Dismiss Plaintiff's First Amended Complaint filed by Defendants Horace Thomas and Brian Zinn (collectively referred to as Individual Capacity Defendants).

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the Official Capacity Defendants' Motion (#20) to Dismiss and **GRANTS** the Individual Capacity Defendants' Motion (#23) to Dismiss.


## PROCEDURAL BACKGROUND

The Official Capacity Defendants moved to dismiss Plaintiff's First Amended Complaint (#13) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff failed to allege a justiciable case and controversy with respect to Claims One and Five and failed to state a claim on which relief may be granted on all claims.

The Individual Capacity Defendants moved to dismiss Plaintiff's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) on the grounds that this Court

3 - OPINION AND ORDER

does not have personal jurisdiction over Defendant Thomas and the Individual Capacity Defendants are entitled to qualified immunity as a matter of law.

The Court heard oral argument on November 8, 2013. At oral argument Plaintiff acknowledged the First Amended Complaint contained several pleading deficiencies, including many that made consideration of the pending Motions difficult. Accordingly, the Court ordered Plaintiff to file a proposed Second Amended Complaint to cure the pleading deficiencies as proposed at oral argument. The Court also allowed Defendants the opportunity to file supplemental memoranda in further support of their Motions to Dismiss in response to Plaintiff's Proposed Second Amended Complaint and allowed Plaintiff to file a supplemental reply memorandum if desired.

On December 12, 2013, Plaintiff filed a Proposed Second Amended Complaint (#40), and the parties timely filed their supplemental memoranda.

For purposes of resolving the pending Motions, the Court deems the Proposed Second Amended Complaint (PSAC) as the operative Complaint.[1] Accordingly, the Official and Individual

---

[1] Although Plaintiff titles the Second Amended Complaint as "Proposed," the Court deems it to be Plaintiff's Second Amended Complaint for purposes of the pending Motions. Because the parties refer to this document as the Proposed Second Amended Complaint, however, the Court will continue to refer to it as such for purposes of clarity and consistency in resolving Defendants' Motions.

Capacity Defendants' Motions to Dismiss are construed as applying to Plaintiff's PSAC.

## FACTUAL BACKGROUND

Plaintiff alleges the following pertinent facts:

**I.    The No-Fly List**

Defendant Federal Bureau of Investigation (FBI), through Defendant Terrorism Screening Center (TSC), is responsible for development and maintenance of the No-Fly List (List), which consists of the names of individuals whom airlines serving or flying within the United States may not transport.  Most individuals on the List, including Plaintiff, are prohibited from flying into, out of, or over Canadian airspace as well as American airspace.

TSC places individuals on the List because "there is a reasonable suspicion that the individuals are known or suspected terrorists."  PSAC ¶ 17.  Such "reasonable suspicion" requires "articulable facts which, taken together with rational inferences, reasonably warrant the determination that an individual is known or suspected to be or has been engaged in conduct constituting, in preparation for, in aid of or related to terrorism or terrorist activities."  PSAC ¶ 17.  Individuals placed on the List, including Plaintiff, are not given notice that they are on the List, are not advised of the factual basis

for placement on the List, and do not have the right to a hearing before a neutral decision-maker to challenge their placement on the List.

Individuals who wish to challenge their placement on the List may submit an inquiry to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP).  DHS TRIP then transmits the inquiry to the TSC, which determines whether any action should be taken.  TSC is the final arbiter of whether an individual is removed from the List.

## II.  **Plaintiff's Inclusion on the No-Fly List**

Plaintiff, an American citizen of Libyan descent, has lived in the United States for 38 years and is a resident of Oregon. Since the 1980s Plaintiff has considered himself an opponent of Muammar Gaddafi's regime in Libya.  In the wake of the revolution in Libya overthrowing the Gaddafi regime, Plaintiff traveled to Libya three times in 2011 and early 2012 as a volunteer with Medical Teams International (MTI), a nongovernmental organization based in Oregon.  While in Libya Plaintiff provided cultural, language, and logistical assistance to MTI by helping deliver medicine, medical equipment, and supplies to Libya, and Plaintiff often worked with Libyan and Tunisian government and humanitarian organizations.

Near the end of his last assignment with MTI, Plaintiff arranged to return to Portland on January 17, 2012, leaving

6 - OPINION AND ORDER

Tunis, Tunisia, on an Air France flight to Paris, France.  When
Plaintiff checked in at the Air France ticket counter in Tunis,
however, the ticket agent told him in the presence of other
travelers that he would not be allowed to board his flight and
that he should speak to United States Embassy officials.
Plaintiff asked to speak to the person in charge of the Air
France office and was taken to the office of Mahmoud Keshlef.  In
Mr. Keshlef's office Plaintiff was shown three emails from the
Air France office in Paris.  The first email dated January 12,
2012, contained instructions to prevent Plaintiff from boarding
his flight.  The second email delivered approximately two hours
later instructed Air France officials in Tunis to permit
Plaintiff to board his flight.  A third email dated January 13,
2012, however, again instructed Air France to prevent Plaintiff
from boarding.

On January 17, 2012, Plaintiff called the American Embassy
in Tunis and was connected with United States Consular Officer
Michael Sweeney.  Sweeney informed Plaintiff that he did not have
any information, but he stated he would contact somebody in
Washington, D.C., and call Plaintiff when he had more
information.  On January 18, 2012, Plaintiff went to the American
Embassy in Tunis and met with Sweeney.  Sweeney stated he did not
have any additional information.  Plaintiff informed Sweeney that

he had purchased an airline ticket that was valid for three months and that it was about to expire.

Two hours later Consular Officer Sweeney called Plaintiff and advised him that "personnel from some undisclosed U.S. agency" wanted to interview him.  PSAC ¶ 27.  Plaintiff suggested they start the interview immediately, but Sweeney indicated that would not be possible because the agency personnel had to travel to Tunis.  Because his airplane ticket was about to expire, Plaintiff asked if the Embassy would cover the additional cost of purchasing a new airplane ticket.  Sweeney responded it would not.  PSAC ¶ 27.

On January 22, 2012, after Plaintiff returned to Libya, he received a call from Consular Officer Sweeney.  Sweeney put Plaintiff on the line with FBI Agent Zinn.  Agent Zinn identified himself as an FBI agent and proposed an interview for January 24, 2012.  Plaintiff requested the interview take place in Libya or at a neutral location such as a hotel in Tunis, but Agent Zinn stated the interview had to take place at the United States Embassy in Tunis.  Agent Zinn advised Plaintiff that he would return to the United States if Plaintiff failed to appear for the interview and nothing would change with respect to Plaintiff's ability to fly home.  PSAC ¶¶ 28-29.

On January 24, 2012, Plaintiff arrived at the American Embassy in Tunis with a Tunisian attorney and was met by Agent

Zinn and the head of Embassy Security.  Agent Zinn escorted

Plaintiff to an interview room in which Horace Thomas, Legal

Attache for the U.S. Embassies in Algiers, Algeria, and Tunis,

Tunisia, was also present.  Agent Zinn advised Plaintiff that he

and Thomas were there to assess "derogatory contacts" that

Plaintiff had made while in Libya and which led to Plaintiff

being prevented from boarding his flight back to the United

States.  PSAC ¶ 30.

In the presence of Plaintiff's Tunisian attorney, Agent Zinn

interviewed Plaintiff for 3½ hours as to his activities in Libya;

the names of people he worked with; his views on terrorist

organizations; whether he had contacts with any terrorist,

mujahideen, or Islamist groups; whether he had knowledge of any

planned attack on the United States or its allies; and his

religious views and practices.

During a break in the interview, Agent Zinn told Plaintiff

that he would be permitted to return to the United States if he

passed a polygraph test.  Plaintiff agreed to take the test.

When another FBI agent asked Plaintiff to waive his

constitutional rights before taking the test, however, Plaintiff

refused and thereby ended the interview.  Although Plaintiff was

free to leave the Embassy throughout the interview, he was not

free to return to the United States in light of the fact that he

was prohibited from boarding an airplane.  In addition, because

the interview was scheduled on such short notice, Plaintiff's American attorney was unable to travel to Tunisia to represent Plaintiff during the interrogation.

Following the interview, Plaintiff and his American attorney contacted Consular Officer Sweeney about what Plaintiff could do to return to the United States, but Sweeney was unable to provide any guidance. Due in part to Plaintiff's family and attorney contacting United States Senator Ron Wyden's office, Sweeney informed Plaintiff in "early February [2012]" that he could return home notwithstanding his inclusion on the No-Fly List. Accompanied by his American attorney, Plaintiff flew from Tunis to Paris on February 13, 2012; from Paris to Amsterdam on February 14, 2012; and then from Amsterdam to Portland.

On February 29, 2012, however, Plaintiff was prohibited from boarding a flight from Portland to Seattle. In early March 2012 Plaintiff traveled by rail to Minneapolis, Minnesota, to represent MTI at an event, and Plaintiff continued to Washington, D.C., by automobile to attend meetings. On March 8, 2013, Plaintiff was invited to Washington, D.C., to participate in a meeting the following week with Libyan government officials, but attempts to obtain a waiver through Senator Wyden's office to permit him to fly were unsuccessful. Plaintiff, therefore, was unable to make that trip. Plaintiff also attempted to fly from Portland to Seattle on December 11, 2012, and July 23, 2013, but

he was not permitted to board those flights.  On July 23, 2013,
Plaintiff "was told by Alaska Airlines employees, at the ticket
counter in front of other passengers, that he was not allowed to
board due to information they received from TSA."  PSAC ¶ 47.

As a result of his alleged placement on the List, Plaintiff
has been unable to continue volunteering with MTI in Libya and
has been unable to explore potential business and employment
opportunities in Libya.  Plaintiff also has been unable to visit
family in Libya and to attend family events.  Plaintiff knows if
he were able to travel to Libya, he would be unable to return to
the United States.  PSAC ¶ 49.  Because Plaintiff has had to
explain to people why he is unable to travel by air to meet
various commitments, he contends he has been stigmatized as a
terrorist or an associate of terrorists.  PSAC ¶ 51.

Although Plaintiff has never officially been told he is on
the List, he suspects he is because of his experiences in being
denied boarding in Tunisia and subsequently in Portland.

Plaintiff submitted a DHS TRIP inquiry seeking review of his
placement on the No-Fly List.  Plaintiff received a letter from
DHS TRIP on July 25, 2013, advising him that DHS "'conducted a
review of any applicable records in consultation with other
federal agencies, as appropriate.  It has been determined that no
changes or conditions are warranted at this time.'"  PSAC ¶ 45.
The July 25, 2013, letter advised Plaintiff of his right to

request an administrative appeal, but the letter did not provide
any information as to the basis for Plaintiff's inclusion on the
List.

**III. <u>Plaintiff's Claims for Relief</u>**

Plaintiff asserts five claims for relief against various
combinations of Defendants.

**A.    Claim One**

In Claim One Plaintiff alleges all Defendants violated
Plaintiff's right to return to the United States as guaranteed
by the Citizenship Clause of the Fourteenth Amendment to the
United States Constitution.  Plaintiff alleges being placed on
the No-Fly List while overseas "effectively rendered Plaintiff
stateless, thereby depriving Plaintiff of all of his rights and
protections under the U.S. Constitution."  PSAC ¶ 52.  Plaintiff
also alleges his "continued presence on the List . . . will
continue to affect his ability to return to the U.S. if Plaintiff
travels outside of the U.S. by boat or alternate mode of
transport, but seeks to return by plane."  PSAC ¶ 53.  Plaintiff
alleges this violation of his Fourteenth Amendment rights gives
rise to a cause of action for damages against the Individual
Capacity Defendants pursuant to *Bivens v. Six Unnamed Agents of
Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff seeks injunctive and declaratory relief as to all Defendants and $1 million in damages from the Individual Capacity Defendants.

**B.   Claim Two**

In two separate counts in Claim Two Plaintiff alleges all Defendants violated his substantive due-process rights.

**1.   Count One**

In Count One of Claim Two Plaintiff alleges Defendants violated Plaintiff's protected liberty interest in international travel.  Plaintiff alleges he has a liberty interest in international travel free from unreasonable burdens, and his continuing inclusion on the No-Fly List lacks a rational relationship to any legitimate government interest because Plaintiff does not pose a security threat to commercial aviation. Plaintiff alleges Defendants' violation of Plaintiff's right to international travel gives rise to a *Bivens* cause of action for damages against the Individual Capacity Defendants.

Accordingly, Plaintiff seeks injunctive and declaratory relief against all Defendants and $1 million in damages from the Individual Capacity Defendants.

**2.   Count Two**

In Count Two of Claim Two Plaintiff alleges all Defendants violated Plaintiff's right to be free from false government stigmatization as an individual who is known or

13 - OPINION AND ORDER

suspected to be involved in terrorist activity.  Plaintiff
alleges his inclusion on the No-Fly List will continue to result
in foreseeable public disclosure of Plaintiff's status on the
List, and he alleges this violation of his right to be free from
false government stigmatization gives rise to a *Bivens* cause of
action for damages against the Individual Capacity Defendants.

Accordingly, Plaintiff seeks injunctive and declaratory
relief against all Defendants and $1 million in damages from the
Individual Capacity Defendants.

### C.   Claim Three

In Claim Three Plaintiff alleges Defendants Holder, FBI,
Comey, TSC, and Healy deprived Plaintiff of substantive due
process by violating his fundamental right to interstate travel
by airplane.  Plaintiff again alleges he does not present a
security threat to commercial aviation, and his placement on the
List, therefore, lacks "any rational relationship to a compelling
government interest."  PSAC ¶ 61.

Plaintiff seeks injunctive and declaratory relief in Claim
Three.

### D.   Claim Four

In Claim Four Plaintiff alleges Defendants Holder, FBI,
Comey, TSC, and Healy violated Plaintiff's right to due process
because the process applicable to his placement on the No-Fly
List and his inability to challenge his continued inclusion on

14 - OPINION AND ORDER

the List violates procedural due process.  In particular,
Plaintiff alleges these Defendants violated Plaintiff's right to
procedural due process by failing to give Plaintiff post-
deprivation notice of his name on the List or the basis of his
inclusion, a "meaningful and timely opportunity" to challenge his
inclusion on the List, and an independent forum in which to
secure his removal from the List.  Plaintiff alleges he was
deprived of his liberty interests in international travel,
freedom from false government stigmatization, and interstate
travel without constitutionally adequate process.

Plaintiff seeks injunctive and declaratory relief on Claim
Four.

**E.   Claim Five**

In Claim Five Plaintiff alleges the Official Capacity
Defendants violated Plaintiff's Fifth Amendment rights against
self-incrimination and representation of counsel by compelling
Plaintiff to participate in interrogation without the
representation of Plaintiff's American counsel.  Plaintiff
alleges as long as he remains on the List, Defendants may engage
in the same tactic of compelled interrogation without the
presence of counsel.

Accordingly, Plaintiff seeks injunctive and declaratory
relief on Count Five.

## DISCUSSION

The Official Capacity Defendants move to dismiss Claims One and Five pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction on the ground that these claims fail to state a justiciable cause of action.  In addition, the Official Capacity Defendants move to dismiss all claims pursuant to 12(b)(6) for failure to state a claim on which relief may be granted.

The Individual Capacity Defendants move to dismiss Claims One and Two (the only Claims in which the Individual Capacity Defendants are named) as to Defendant Thomas pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  In addition, the Individual Capacity Defendants assert they are entitled to qualified immunity on Claims One and Two and, accordingly, move to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   **Standards**

   A.   **Federal Rule of Civil Procedure 12(b)(1)**

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations.  *Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005).  The court may permit discovery to determine whether it has jurisdiction.  *Data Disc, Inc. v. Sys.*

16 - OPINION AND ORDER

*Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  The court has broad discretion in granting discovery and may narrowly define the limits of such discovery.  *Id.*  When the court "receives only written submissions, the plaintiff need only make a *prima facie* showing of jurisdiction."  *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002).  Plaintiff has the burden to establish that the court has subject-matter jurisdiction.  *Ass'n of American Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

   **B.   Federal Rule of Civil Procedure 12(b)(2)**

      When "the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction."  *Dist. Council No. 16 of Intern. Union of Painters & Allied Trades, Glaziers, Architectural Metal & Glass Workers, Local 1621 v. B&B Glass, Inc.*, 510 F.3d 851, 855 (9th Cir. 2007)(citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the juris-dictional issues."  *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001)(citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the court makes a jurisdictional decision based only on pleadings and affidavits

17 - OPINION AND ORDER

submitted by the parties and does not conduct an evidentiary hearing, the plaintiff need make only a *prima facie* showing of personal jurisdiction. *B&B Glass*, 510 F.3d at 855 (citation omitted).  When determining whether the plaintiff has met the *prima facie* showing, the court must assume the truth of uncontroverted allegations in the complaint. *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002).

When the court rules on a defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff's version of the facts, unless directly contravened, is taken as true, and the court must resolve factual conflicts in the parties' affidavits in the plaintiff's favor. *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements LTD*, 328 F.3d 1122, 1129 (9th Cir. 2003).

### C. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546). When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

## II.  **Official Capacity Defendants' Motion (#20) to Dismiss**

The Official Capacity Defendants move to dismiss Plaintiff's Claims One and Five on the ground that this Court lacks subject-matter jurisdiction because Plaintiff does not have standing to seek injunctive and declaratory relief on those claims. The Official Capacity Defendants also move to dismiss all of

Plaintiff's claims against them because Plaintiff fails to state a claim on the merits.

**A.   Subject-Matter Jurisdiction**

The Official Capacity Defendants contend Plaintiff is not entitled to the declaratory and injunctive relief sought in Plaintiff's Claims One and Five because he has not alleged an injury that is sufficiently likely to recur.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000)(citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).  To have standing to seek injunctive relief, a plaintiff must show "that he is realistically threatened by a repetition" of the injury that the injunction seeks to redress.  *Lyons*, 461 U.S. at 109.  A plaintiff must establish a reasonable fear that the injury will recur.  "It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."  *Id.* at 107 n.8 (emphasis in original).  To make a sufficient showing, a plaintiff must establish either "'that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy'" or "'the harm is part of a pattern of officially sanctioned . . . behavior, violative of plaintiff's federal rights.'"  *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012)

20 – OPINION AND ORDER

(quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001)) (ellipses in original).

"[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). Thus, a plaintiff must demonstrate the declaratory judgment sought will redress the injury suffered as a result of the allegedly illegal action. Mere "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). A plaintiff whose injury lies wholly in the past without a reasonable likelihood of recurring in the future, therefore, lacks standing to seek a declaratory judgment because the remedy sought would only serve to give the aggrieved plaintiff the "psychic satisfaction" of having a court declare the defendant's past actions illegal. *Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 694 (9th Cir. 2010).

Thus, as with injunctive relief, Plaintiff must demonstrate he is reasonably threatened by repetition of the injury to establish that he has standing to seek a declaratory judgment.

**1. Claim One:  Fourteenth Amendment Citizenship Clause**

In Claim One Plaintiff asserts the Official Capacity Defendants denied Plaintiff his rights under the Citizenship Clause of the Fourteenth Amendment to the United States Constitution to return to the United States.  Plaintiff contends the Official Capacity Defendants stranded Plaintiff in Libya and Tunisia by placing him on the No-Fly List and thereby effectively rendering him stateless.  Plaintiff, therefore, seeks a declaratory judgment declaring that Defendants denied Plaintiff his rights under the Fourteenth Amendment as a United States citizen.  Plaintiff also seeks an injunction prohibiting Defendants from preventing Plaintiff's return to the United States by air from future international travel and from requiring Plaintiff to participate in potentially incriminating interrogation by United States officials without counsel of choice to assist Plaintiff.

Defendants contend the Court should dismiss Claim One because the injury alleged by Plaintiff in the PSAC is wholly in the past and is not likely to recur.  Indeed, Plaintiff acknowledges in his PSAC that he returned to the United States on February 14, 2012, which was approximately three weeks after he was initially denied boarding.  PSAC ¶¶ 35-36.  Plaintiff, however, also notes he has been denied boarding on airplanes three additional times since returning to Portland.  PSAC ¶ 47.

22 - OPINION AND ORDER

At the heart of Claim One is an alleged *de facto* denial of Plaintiff's rights as an American citizen because Defendants deprived Plaintiff of his right to return to the United States by placing him on the No-Fly List while abroad in a country where air travel was the only practicable means of returning to the United States.  In other words, Plaintiff does not base Claim One on an alleged right to international travel, but rather a much narrower right to *return* to the United States from a location abroad in which the only practicable means of return is by air.

On the face of the PSAC, however, it is unlikely that Plaintiff could be stranded in a foreign country where air travel is the only practicable means of return to the United States because, as Plaintiff acknowledges, his current presence in the United States and on the No-Fly List render it improbable that this injury will recur under Plaintiff's current circumstances. Plaintiff's alleged likelihood of future injury on Claim One is based on a fear that he will not be able to return to the United States from a location abroad that he acknowledges he cannot get to while on the List.  Thus, any such injury is not "realistically threatened," and, therefore, Plaintiff is not entitled to injunctive and declaratory relief on that basis at this time.  *See Lyons*, 461 U.S. at 109.

Accordingly, because Plaintiff only seeks in Claim One injunctive and declaratory relief as to the Official Capacity Defendants, the Court dismisses Claim One on this record.

### 2. Claim Five:  Fifth Amendment Right Against Self-Incrimination

In Claim Five Plaintiff alleges the Official Capacity Defendants violated Plaintiff's Fifth Amendment right against self-incrimination by requiring Plaintiff to submit to an interview before he would be allowed to return to the United States by air.  Plaintiff specifically alleges "[a]lthough [P]laintiff was free to leave the Embassy where his interrogation was conducted, he was not free to leave Tunisia to return to his home and family in the U.S. unless and until he cooperated with defendant FBI agents by answering questions which could be used against him in future criminal proceedings."  PSAC ¶ 32.  In addition, Plaintiff alleges the Official Capacity Defendants denied him counsel of choice by scheduling the interview before his counsel had an opportunity to get to Tunisia from the United States.

The Court concludes Plaintiff's Claim Five fails for much the same reasons as Claim One.  As with the circumstances set out in Claim One, Plaintiff does not allege facts showing that he presently faces a realistic threat of repetition of the Hobson's choice of cooperating with interrogation abroad as a precursor to returning to the United States or being stranded

24 – OPINION AND ORDER

abroad because his presence in the United States and alleged inclusion on the No-Fly List makes the possibility of being stranded abroad remote at this time.

It appears Plaintiff seeks to re-characterize Claim Five later in the PSAC when he alleges "the same tactic of forcing [P]laintiff to participate in coercive interrogations without the assistance of counsel in order to be removed from the [No-Fly List] *can* be used by defendants." PSAC ¶ 67 (emphasis added). Thus, Plaintiff also asserts the coercion he fears will recur does not arise from being stranded in a foreign country, but rather from the risk of being interrogated again without counsel as a condition of being removed from the No-Fly List.

Even viewing Plaintiff's PSAC with the requisite inferences favorable to him, the Court concludes Plaintiff's alternative characterizations of Claim Five do not sufficiently plead a basis for injunctive and declaratory relief because Plaintiff does not allege there have been any further attempts to interrogate him since his return to the United States more than two years ago nor is there any pleaded basis from which one could plausibly infer that Defendants are likely to attempt to use Plaintiff's presence on the No-Fly List to compel his cooperation with interrogation. In other words, an allegation that Defendants *can* use Plaintiff's alleged status on the No-Fly List to compel him to cooperate with interrogation without counsel

does not constitute "a realistic threat" that Defendants *are likely* to do so in the future.

Accordingly, the Court concludes on this record that Plaintiff lacks standing to seek prospective relief on Claim Five, and, therefore, the Court dismisses Claim Five.[2]

**B.   Failure to State a Claim**

The Official Capacity Defendants seek to dismiss Plaintiff's remaining claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**1.   Claim Two:   Substantive Due Process**

Plaintiff alleges two separate counts of substantive due-process violations under Claim Two of his PSAC.  In Count One Plaintiff alleges all Defendants violated his protected liberty interest in international travel by placing him on the No-Fly List.  In Count Two Plaintiff alleges all Defendants violated his substantive due-process right to be free from false government stigmatization.

---

[2] Even if Plaintiff's allegations on Claim Five could plausibly establish standing to seek prospective relief, the Court notes such a claim, nevertheless, is without merit.  A coerced statement is only "'used' in a criminal case" to establish a Fifth Amendment violation "when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status."  *Stoot v. City of Everett*, 583 F.3d 910, 925 (9th Cir. 2009).  There is no such allegation in this case.

The Official Capacity Defendants move to dismiss both Counts of Claim Two as to Defendants Kerry, named in his official capacity as Secretary of State, and the Department of State because the Department of State does not have a role in No-Fly List determinations.  Indeed, the only allegations concerning Defendants Department of State and Kerry relevant to Claim Two are that Consular Officer Sweeney, a State Department employee, corresponded with Plaintiff after he was denied boarding; that Sweeney connected Plaintiff with Agent Zinn without informing Plaintiff that Agent Zinn was with the FBI; and that the interrogation took place at the U.S. Embassy in Tunis, a Department of State facility.

The Court on this record concludes these allegations are insufficient to state any plausible claim for denial of substantive due process under Claim Two, and, therefore, the Court dismisses Claim Two as to Defendants Kerry and State.

### a.   Count One:  Right to International Travel

In Count One of Claim Two Plaintiff asserts his placement on the No-Fly List violates his protected liberty interest in international travel.  Specifically, Plaintiff argues his placement on the No-Fly List is not rationally related to any legitimate government interest because "Plaintiff poses no security threat to commercial aviation."  PSAC ¶ 56.  The Official Capacity Defendants respond by arguing the freedom to

27 - OPINION AND ORDER

travel internationally is not a right protected by substantive due process and even if it were, Plaintiff has failed to allege an adequate deprivation of that right because alternative means of travel remain available to him.

The Ninth Circuit has concluded the right to travel internationally is protected by substantive due process. *See Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002)(recognizing the right to international travel as a protected right under substantive due process although the court did not agree about the appropriate level of scrutiny). *See also Aptheker v. Sec'y of State*, 378 U.S. 500, 505 (1964)(quoting *Kent v. Dulles*, 357 U.S. 116, 127 (1958)("The right to travel abroad is 'an important aspect of the citizen's 'liberty'' guaranteed in the Due Process Clause of the Fifth Amendment."); *Mohamed v. Holder*, No. 1:11-CV-50 (AJT/TRJ), 2014 WL 243115, at *14 (E.D. Va. Jan. 22, 2014); *Ibrahim v. Dep't of Homeland Sec.*, No. C 06-00545 WHA, 2012 WL 6652362, at *7 (N.D. Cal., Dec. 20, 2012).  The right to international travel "'has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment.  As such this 'right,' the Court has held, can be regulated within the bounds of due process.'" *Haig v. Agee*, 453 U.S. 280, 307 (1981)(quoting *Califano v. Torres*, 435 U.S. 1, 4 n.6 (1978)).

Thus, this Court rejects the Official Capacity Defendants' argument that the right to international travel is not a cognizable right and holds, consistent with *Eunique*, *Aptheker*, and *Mohamed*, the right to international travel is a constitutional right protected by substantive due process.[3]

The Court also notes Plaintiff alleges "[a]ir travel is the only practical means of passenger travel between the North American continent and Europe, Asia, Africa, the Middle East, and Australia." PSAC ¶ 16. Although this may be the sort of conclusory allegation that ordinarily is not entitled to acceptance as true at this stage of the proceedings, it is, nevertheless, consistent with the realities of the modern world.

> While the Constitution does not ordinarily guarantee the right to travel by any particular form of transportation, given that other forms of travel usually remain possible, the fact remains that for international travel, air transport in these modern times is practically the only form of transportation, travel by ship being prohibitively expensive.

*Ibrahim*, 2012 WL 6652362, at *7. *See also Latif v. Holder*, No. 3:10-cv-00750-BR, 2013 WL 4592515, at *8 (D. Or. Aug. 28, 2013); *Mohamed*, 2014 WL 243115, at *6. Perhaps with the exception of a relatively few countries in North and Central America, travel by air is not merely the most convenient form of international travel, but, given time and financial realities, travel by air is

---

[3] The Court need not decide at this point the level of scrutiny that applies to the right to international travel.

the *only* practical mode of international travel for the vast
majority of travelers.

Moreover, it is undisputed that inclusion on the
No-Fly List prohibits listed persons from boarding commercial
flights to or from the United States and from flying over
American airspace.  Thus, the practical necessity of traveling by
air to travel internationally means being on the No-Fly List is
virtually a complete bar to such travel by American citizens.
Accordingly, the Court concludes such a bar is sufficient to
implicate a citizen's substantive due-process right to
international travel.

Finally, the Court notes Plaintiff plausibly
alleges his placement on the No-Fly List as a citizen who has
never engaged in activities related to terrorism and who does not
pose a security threat to commercial aviation violates even the
most deferential review standard under substantive due process.

In summary, the Court concludes Plaintiff has
stated a plausible substantive due-process claim based on his
right to international travel.  Accordingly, on this record the
Court denies the Official Capacity Defendants' Motion to Dismiss
Count One of Claim Two as to the remaining Official Capacity
Defendants.

**b.  Count Two:  False Government Stigmatization**

In Count Two of Claim Two Plaintiff alleges Defendants violated Plaintiff's substantive due-process rights when they subjected Plaintiff to false government stigmatization as a terrorist by placing him on the No-Fly List.  The freedom from false government stigmatization or "stigma plus" is a procedural due-process doctrine and is not a protected constitutional right for purposes of a substantive due-process claim.  *Paul v. Davis*, 424 U.S. 693, 712-14 (1976)(declining to consider the plaintiff's stigma claim under substantive due process after recognizing "stigma plus" doctrine in the procedural due-process context).  *See also Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 501-02 (6th Cir. 2007); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983).  *But see Moore v. Nelson*, 394 F. Supp. 2d 1365, 1367-69 (M.D. Ga. 2005)(suggesting a "stigma plus" claim could provide a basis for a substantive due-process claim if the defendant's conduct "shocks the conscience").[4]

On this record the Court dismisses Count Two of Claim Two.

---

[4] Even if the *Moore* court is correct that a "stigma plus" claim is viable under substantive due process in certain circumstances, Plaintiff has not alleged in his PSAC any stigmatizing conduct sufficiently egregious to "shock the conscience."

**2. Claim Three: Substantive Due-Process Right to Interstate Travel**

In Claim Three Plaintiff alleges Defendants Holder, FBI, Comey, TSC, and Healey violated Plaintiff's substantive due-process fundamental right to interstate travel by placing Plaintiff on the No-Fly List.  As to interstate travel, however, "'burdens on a single mode of transportation do not implicate the right to interstate travel.'"  *Gilmore v. Gonzalez*, 435 F.3d 1125, 1137 (9th Cir. 2006)(quoting *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999)).

Plaintiff attempts to distinguish this precedent by arguing the limitation in this case is much more substantial than in *Miller* and *Gilmore* because it entirely precludes Plaintiff from interstate travel by air, which, in many circumstances, is the most convenient form of interstate travel.  Plaintiff, however, misinterprets *Gilmore* and *Miller*.  In *Gilmore* the Ninth Circuit held "Gilmore does not possess a fundamental right to travel by airplane even though it is the most convenient mode of travel for him."  435 F.3d at 1137.  Thus, it was not the less-than-absolute nature of the restriction at issue in *Gilmore* that defeated the plaintiff's claim, but instead the lack of a right to interstate travel by any particular form of transportation; *i.e.*, in this case by air.

On this record the Court concludes Plaintiff does not have a protected liberty interest in interstate travel by air, and, therefore, the Court dismisses Claim Three.

### 3. Claim Four:  Procedural Due Process

In Claim Four Plaintiff alleges the procedures provided in the DHS TRIP and judicial-review process are constitutionally inadequate and violate the Due Process Clause of the Fifth Amendment.  Plaintiff alleges the DHS TRIP and judicial-review process is constitutionally inadequate because Plaintiff has not been provided with post-deprivation notice of his status on the No-Fly List, has not been informed of the basis for his inclusion on the List, and has not had a meaningful and timely opportunity in an independent forum to challenge his inclusion on the List. Plaintiff alleges these procedural inadequacies unconsti-tutionally deprive him of his protected liberty interests in international travel, freedom from false stigmatization, and interstate travel.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v.*

33 - OPINION AND ORDER

*Manzo*, 380 U.S. 545, 552 (1965)).  Due process, however, "'is flexible and calls for such procedural protections as the particular situation demands.'"  *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  The court must weigh three factors in evaluating the sufficiency of procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

### a.  Private Interest

Plaintiff alleges in his PSAC that he has been deprived of three liberty interests:  the right to international travel, the right to be free from false government stigmati-zation, and the right to interstate travel.  The Official Capacity Defendants contend none of these interests are cognizable under procedural due process.

### I.  Right to International Travel

Plaintiff asserts he has been deprived of his protected liberty interest in international travel.  The Court has already concluded the right to international travel by air is a cognizable liberty interest under procedural due process.  See

34 - OPINION AND ORDER

*Latif*, 2013 WL 4592515, at *7-*9.  Moreover, the private interest in international travel is substantial; *i.e.,* international travel is not merely a luxury in light of the fact that many individuals find it is necessary to engage in business, to maintain family relationships, to practice a religion, or to perform humanitarian work.  Indeed, some of these same reasons underlie Plaintiff's alleged purposes for traveling to Libya and Tunisia.  PSAC ¶¶ 5, 21-22, 48-49.  Thus, tourism, although far from a trivial interest in its own right, is not the only reason persons seek to travel internationally in these modern times.

The Court concludes on this record that Plaintiff has alleged sufficient facts to establish at this early stage of the proceedings that his placement on the No-Fly List deprived him of the right to international travel, which is a substantial private interest entitled to procedural due-process protection.

### ii.  False Government Stigmatization

Plaintiff also asserts he has been deprived of his protected liberty interest in being free from false government stigmatization.  False government stigmatization can implicate procedural due-process protections when a plaintiff shows "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of 'some more tangible interest[] such as employment.'"  *Ulrich*

*v. City and Cty of San Francisco*, 308 F.3d 968, 982 (9th Cir.
2002)(quoting *Paul*, 424 U.S. at 701, 711 (2002)(emphasis and
omission in original)).  "The 'plus' must be a deprivation of
liberty or property by the state that directly affects the
plaintiff's rights." *Miller v. California*, 355 F.3d 1172, 1178
(9th Cir. 2004).  The "plus" prong is satisfied if the plaintiff
cannot "do something that [he] could otherwise do." *Id.* at 1179.
*See also Latif*, 2013 WL 4592515, at *9.  This formulation has
come to be known as the "stigma plus" test.  *Ulrich*, 308 F.3d at
982.

          For purposes of this Motion, three of the
four requirements for a cognizable "stigma plus" claim are easily
determined.  First, there is unquestionably a significant stigma
attached to placement on the No-Fly List.  Indeed, it is
difficult to conceive of a more stigmatizing status than being
suspected of involvement with terrorist activity.  Second, at
this stage of the proceedings Plaintiff's allegations that he is
not involved in terrorist activity and does not pose a security
threat to commercial aviation sufficiently contests the accuracy
of the alleged stigmatization.  Third, as noted, Plaintiff's
placement on the No-Fly List deprives him of his right to
international travel by air, which satisfies the "plus" element.
See *Latif*, 2013 WL 4592515, at *10.  As currently pled, however,
Plaintiff's allegations fall short of satisfying the fourth

element of public disclosure, which requires that the defendant "actually disseminate the stigmatizing comments in a way that would reach . . . the community at large." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010).  Disclosures to other government agencies or to an opposing litigating party are not "public" for purposes of "stigma plus." *See Bishop v. Wood*, 426 U.S. 341, 348-49 (1976).  *See also Wenger v. Moore*, 282 F.3d 1068, 1074 n.5 (9th Cir. 2002).

Plaintiff alleges the following in his PSAC:

> When plaintiff checked in at the Air France ticket counter at Carthage Airport in Tunis, he was told by the ticket agent – in the presence of other travelers – that he would not be allowed to board his flight, and that he should speak to U.S. Embassy personnel.  Plaintiff asked to speak to the person in charge of the Air France office at the airport and was told to speak to Mahmoud Keshlef.  Plaintiff was then escorted to Keshlef's office.  During the meeting, Keshlef showed plaintiff three emails on his computer screen in French, translated by Keshlef, which had been sent on January 12, 2013.  The first email came from the Air France office in Paris as per instructions from American authorities asking Air France to not allow plaintiff to board his flights.  A second email came two hours later on January 12th telling Air France to allow plaintiff to board.  A third email was sent on January 13th telling Air France not to allow plaintiff to board.

PSAC ¶ 24.  As to a subsequent boarding denial at Portland International Airport, Plaintiff alleges:

> On July 23rd, [2013,] plaintiff was told by Alaska Airlines employees, at the ticket counter in front of other passengers, that he was not allowed to board due to information they received from TSA.

37 – OPINION AND ORDER

> Plaintiff then spoke with Rick Kolonder while at
> the airport, a supervisory transportation security
> inspector with TSA, who told plaintiff he must
> take this up with Homeland Security.

PSAC ¶ 47.

Here the government disclosed to Air France
and Alaska Airlines that Plaintiff was to be denied boarding
and instructed the airlines to refer Plaintiff to the United
States Embassy and TSA respectively.  The airlines are prohibited
from disclosing such information to the public.  49 C.F.R.
§§ 1520.5(b)(9)(ii), 1544.305(f)(2).  Thus, the instruction to
the airlines not to permit Plaintiff to board and to refer
Plaintiff to government officials did not constitute
dissemination of the stigmatizing information in such a way as to
reach the community at large.

The ticket agents also made statements to
Plaintiff that he would not be permitted to board together with
references to TSA and the United States Embassy respectively.
The ticketing agents told him "in the presence of other
travelers" and "in front of other passengers" that he would not
be permitted to board and that he should speak to TSA or the
Embassy.  PSAC ¶¶ 24, 47.  While the "other passengers" may be
the "community at large," these allegations still do not give
rise to an inference that the stigmatizing statements reached the
other passengers so as to cause harm to Plaintiff's reputation.
In other words, it is far from clear that the other passengers

38 - OPINION AND ORDER

were sufficiently privy to Plaintiff's conversations with the
ticketing agents to constitute a public disclosure.  Plaintiff's
allegations, therefore, are "merely consistent with" the Official
Capacity Defendants' purported liability and "stop[] short of the
line between possibility and plausibility of entitlement to
relief."  *See Iqbal*, 556 U.S. at 678.  Thus, as currently pled,
Plaintiff's "stigma plus" procedural due-process claim is not
viable.

### iii. Right to Interstate Travel

Plaintiff also asserts he has been deprived
of his protected liberty interest in interstate travel.  As
noted, however, "'burdens on a single mode of transportation do
not implicate the right to interstate travel.'"  *Gilmore*, 435
F.3d at 1137 (quoting *Miller*, 176 F.3d at 1205).  Thus, Plaintiff
cannot rely on his right to interstate travel to establish a
"liberty interest" for substantive due-process purposes.

In summary, Plaintiff sufficiently alleges he
has been deprived of his protected liberty interest in
international travel.  Plaintiff's allegations are insufficient,
however, to establish he has been deprived of a protected liberty
interest in being free from false government stigmatization or
deprived of a protected liberty interest in interstate travel.

### b.  Risk of Erroneous Deprivation

As noted, for the second prong of the *Mathews* balancing analysis the court must consider "the risk of erroneous deprivation of [the liberty or property] interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards."  424 U.S. at 335.

The Court concludes on this record that Plaintiff's allegation of a cognizable liberty interest in international travel; factual allegations about the DHS TRIP process; allegations concerning deficiencies in the procedures provided including lack of notice of being on the No-Fly List, lack of disclosure of the basis for his presence on the List, and lack of an independent forum in which to challenge being on the List; and Plaintiff's alleged additional necessary procedures are sufficient to state a plausible claim for relief at this stage of the proceedings.

### c.  Government's Interest

Finally, for the third prong of the *Mathews* balancing analysis the court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.*  Unquestionably, "no governmental interest is more compelling than the security of the Nation."  *Haig*, 453 U.S. at 307.  Over the last three decades

40 – OPINION AND ORDER

the security of commercial airlines has repeatedly been at the forefront of national security concerns. *See Mohamed*, 2014 WL 243115, at *6-*10.  Nevertheless, "[w]hile the government no doubt has a significant and even compelling interest, an American citizen placed on the No-Fly List has countervailing liberty interests and is entitled to a meaningful opportunity to challenge that placement." *Id.*, at *15.

At this stage of the proceedings the Court concludes on this record that Plaintiff has plausibly alleged the procedures in the DHS TRIP process and subsequent judicial review do not strike the proper balance under *Mathews* and, therefore, violate due process.  Accordingly, the Court cannot conclude as a matter of law that the DHS TRIP process provides sufficient procedural safeguards to defeat Plaintiff's procedural due-process claim.  Before the Court can make a final determination, however, a substantial development of the record is required.

### C.   Conclusion

In summary, as to the Official Capacity Defendants, the Court concludes as follows:

1.   The Court dismisses Claims One and Five without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

2.   The Court dismisses with prejudice Count Two of Claim Two, Claim Three, and that part of Claim Four concerning

the right to interstate travel pursuant to Rule 12(b)(6). Because, as discussed above, Plaintiff alleges in these claims deprivation of liberty interests that are not cognizable under their respective due-process doctrines as a matter of law, a further opportunity to amend would be futile. *See* Fed. R. Civ. P. 15(a)(2). *See also Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011)(noting leave to amend is properly denied "if amendment would be futile").

      3.  The Court dismisses without prejudice Count One of Claim Two pursuant to Rule 12(b)(6) as to Defendants Kerry and the Department of State only.

      4.  The Court dismisses Plaintiff's "stigma plus" portion of Claim Four pursuant to Rule 12(b)(6) without prejudice.

      5.  The Court denies the Official Capacity Defendants' Motion to Dismiss Count One of Claim Two as to Defendants Holder, FBI, Comey, TSC, and Healey and that portion of Claim Four as to Plaintiff's right to international travel.

## III.  **Individual Capacity Defendants' Motion (#23) to Dismiss**

     The Individual Capacity Defendants move to dismiss Counts One and Two on the grounds that this Court does not have personal jurisdiction over Defendant Thomas in light of the allegations in the PSAC, and, in any event, the Individual capacity Defendants are entitled to qualified immunity.

42 - OPINION AND ORDER

**A.   Personal Jurisdiction**

An exercise of personal jurisdiction must satisfy the requirements of the long-arm statute of the forum state and comport with the principles of federal due process.  *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).   Because Oregon's "long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01.   *See also* Or. R. Civ. P. 4(L).

"There are two types of personal jurisdiction:  general and specific." *Ziegler*, 64 F.3d at 473.   General jurisdiction exists when the nonresident defendant engages in "'continuous and systematic . . . contacts'" that "'approximate physical presence' in the forum state." *Schwarzenegger*, 374 F.3d at 801 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), and *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).   "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into a court in the forum state to answer for any of its activities anywhere in the world." *Id.*

The Ninth Circuit has established a three-prong test for analyzing a claim of specific jurisdiction.

43 - OPINION AND ORDER

      (1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

      (2)   the claim must be one which arises out of or relates to the defendant's forum-related activities; and

      (3)   the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  If Plaintiff is successful in doing so, the burden shifts to the defendant to "'present a compelling case' that exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

    Plaintiff's allegations as to Legal Attache Thomas are sparse.  Plaintiff alleges Legal Attache Thomas is an FBI employee who works as the Legal Attache for the United States Embassies in Algiers, Algeria, and Tunis, Tunisia.  Plaintiff alleges when he arrived at the United States Embassy in Tunis for his interview with Agent Zinn, he was "escorted into an interview room where defendant Thomas was also present."  PSAC ¶ 30.  In his specific allegations concerning the individual liability of Agent Zinn and Legal Attache Thomas, Plaintiff alleges:

44 - OPINION AND ORDER

Regardless of whether defendants Zinn and Thomas
were involved in the initial decision to place
plaintiff on the No Fly List, they were complicit
in using plaintiff's continued presence on the
List – in violation of plaintiff's clearly
established constitutional rights to procedural
and substantive due process under the Fifth
Amendment, and citizenship right under the
Fourteenth Amendment – to require him to submit to
interrogation in Tunisia without his U.S. counsel
present and to cooperate with defendant FBI.

PSAC ¶ 41.

Although defendant Thomas, unlike Zinn, was not
stationed in Portland, Oregon, his participation
in plaintiff's interrogation and denial of
plaintiff's constitutional rights was expressly
aimed and purposefully directed toward Oregon in
that Thomas knew plaintiff was being prevented
from returning to his home and family in Oregon
and, if he were allowed to return to Oregon, would
be prevented from leaving Oregon by plane.

PSAC ¶ 42.

Plaintiff's allegations are well short of establishing that
this Court has personal jurisdiction over Legal Attache Thomas.
The only factual allegations concerning Thomas are that he was
the Legal Attache in the United States Embassies in Algeria and
Tunisia and was "present" in the room in which Agent Zinn
interviewed Plaintiff.  PSAC ¶¶ 11, 30.  Moreover, Thomas has
never traveled to or resided in, registered to vote, worked,
maintained an office, or owned any real or personal property in
Oregon.  Mem. in Support of Individual Capacity Defs.' Mot. to
Dismiss (#24), Ex.1 (Decl. of Horace Thomas).

45 – OPINION AND ORDER

Thomas's mere presence during allegedly illegal acts by other parties is insufficient to show that he engaged in "continuous and systematic" contacts with the forum state for the purpose of establishing general jurisdiction or "purposefully direct[ed]" any activity to the forum state for the purpose of establishing specific jurisdiction. *See Schwarzenegger*, 374 F.3d at 801-02.

Accordingly, the Court concludes on this record that Plaintiff's claims against Legal Attache Thomas are insufficient to establish this Court's personal jurisdiction over him.

**B.   Qualified Immunity**

As noted, Plaintiff relies on *Bivens* to support his claims against the Individual Capacity Defendants.  403 U.S. 388.  Under *Bivens* and its progeny, federal agents may be sued for damages in their individual capacities to remedy violations of certain constitutional rights.  *See, e.g.*, *Bivens*, 403 U.S. at 389 (creating the cause of action for Fourth Amendment violations); *Davis v. Passman*, 442 U.S. 228, 234 (1979)(extending the *Bivens* cause of action to Fifth Amendment due-process claims); *Carlson v. Green*, 446 U.S. 14 (1980)(applying the *Bivens* cause of action to Eighth Amendment violations).

Government officials sued under *Bivens*, however, are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

46 - OPINION AND ORDER

constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity can be properly raised in a pre-discovery

dispositive motion such as a motion under Rule 12(b)(6).

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  *See also A.D. v.*

*California Highway Patrol*, 712 F.3d 446, 456 (9th Cir. 2013).

"[W]hether a government official is entitled to qualified

immunity is a two-part inquiry:  (1) whether the facts alleged,

taken in the light most favorable to the party asserting the

injury, show that the official's conduct violated a

constitutional right; and (2) whether that right was clearly

established 'in light of the specific context of the case.'"

*Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir.

2011)(quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The

"dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted."

*Saucier*, 533 U.S. at 202, *overruled in part on other grounds by*

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Thus, to avoid

qualified immunity, the right allegedly violated must have been

"'clearly established' at the time of the challenged conduct."

*Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011).

"Qualified immunity gives government officials breathing

room to make reasonable but mistaken judgments about open legal

questions.  When properly applied, it protects 'all but the
plainly incompetent or those who knowingly violate the law.'"
*Id*. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
The plaintiff is not required to support the alleged violated
right with "a case directly on point, but existing precedent must
have placed the statutory or constitutional question beyond
debate."  *Id*. at 2083.  "In most cases, the lack of on-point
precedent would compel [courts] to grant qualified immunity."
*Maxwell v. County of San Diego*, 708 F.3d 1075, 1083 (9th Cir.
2013).  "Nevertheless, 'in an obvious case, [general] standards
can 'clearly establish' the answer, even without a body of
relevant case law.'"  *Id*. (quoting *Groh v. Ramirez*, 540 U.S. 551,
578 (2004)).

> **1.   Claim One:  Fourteenth Amendment Citizenship
> Clause**

In Claim One Plaintiff alleges the actions of Agent
Zinn and Legal Attache Thomas in "relying on Plaintiff's
placement on the [No-Fly List] while outside of the U.S. to bar
his return to the U.S. to coerce his participation in his
interrogation deprived plaintiff of his rights as a citizen, give
rise to a cause of action for damages directly under the
Citizenship Clause of the Fourteenth Amendment."  PSAC ¶ 54.  The
Citizenship Clause of the Fourteenth Amendment provides:  "All
persons born or naturalized in the United States, and subject to

the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1.

Plaintiff's theory in Claim One appears to be that his placement on the No-Fly List while abroad violated Plaintiff's rights as a United States citizenship as guaranteed by the Citizenship Clause and that the Individual Capacity Defendants, therefore, also violated Plaintiff's right to citizenship when Agent Zinn used Plaintiff's status on the List to leverage his cooperation in the interrogation at the United States Embassy in Tunis.[5] Plaintiff does not, however, allege the Individual Capacity Defendants were responsible for placing Plaintiff on the No-Fly List; *i.e.*, Plaintiff has not alleged the Individual Capacity Defendants were the federal agents directly responsible for stranding him abroad. Moreover, Plaintiff does not cite any authority, and the Court has not found any, that indicates the rights secured under the Citizenship Clause extend to a prohibition against interviewing a citizen stranded abroad as a condition of boarding a flight back to the United States. Thus, Plaintiff has not plausibly alleged Agent Zinn's interrogation of Plaintiff in Tunisia while Plaintiff was on the No-Fly List

---

[5] Unlike other portions of the Fourteenth Amendment such as the Privileges and Immunities Clause, the Citizenship Clause applies to actions by the federal government. *Saenz v. Roe*, 526 U.S. 489, 507-08 (1999). *See also Russell v. Hug*, 275 F.3d 812, 822 (9th Cir. 2002)(Privileges and Immunities Clause of the Fourteenth Amendment "applies in terms only to actions taken by states, not to those . . . taken by the federal government.").

violated a "clearly established" right under the Citizenship Clause.

Accordingly, the Court concludes on this record that the Individual Capacity Defendants are entitled to qualified immunity on Claim One.

### 2. Claim Two: Substantive Due Process

As noted, in Claim Two Plaintiff asserts two counts of substantive due-process violations.  In Count One Plaintiff alleges his placement on the No-Fly List and Agent Zinn's interrogation of Plaintiff in Tunisia while he was on the No-Fly List violated Plaintiff's protected right to international travel.  In Count Two Plaintiff alleges the Individual Capacity Defendants' actions violated Plaintiff's substantive due-process right to freedom from false government stigmatization.

### a. Count One:  Right to International Travel

Although Plaintiff purports to bring Count One against the Individual Capacity Defendants on the ground that they violated Plaintiff's substantive due-process right to international travel, Plaintiff does not allege the Individual Capacity Defendants were responsible for Plaintiff's placement on the No-Fly List.  Thus, Plaintiff has not alleged the Individual Capacity Defendants interfered in any way with his right to international travel.  The fact that Agent Zinn allegedly interviewed Plaintiff as a condition of boarding a flight back to

50 - OPINION AND ORDER

the United States does not establish that the Individual Capacity Defendants violated Plaintiff's right to international travel. In other words, Plaintiff's right to international travel was infringed as a function of being on the No-Fly List with or without the alleged actions of the Individual Capacity Defendants.

Accordingly, the Court concludes on this record that the Individual Capacity Defendants are entitled to qualified immunity on Count One of Claim Two.

### b.    Count Two:  False Government Stigmatization

Plaintiff's Count Two fails as to the Individual Capacity Defendants for the same reason that it failed against the Official Capacity Defendants:  The freedom from false government stigmatization or "stigma plus" is not a cognizable substantive due-process right.  Moreover, even if "stigma plus" were cognizable under substantive due process, Plaintiff has not alleged the Individual Capacity Defendants publicized Plaintiff's inclusion on the No-Fly List.

Accordingly, the Court concludes on this record that the Individual Capacity Defendants are entitled to qualified immunity in light of the fact that Plaintiff failed to allege the violation of a cognizable, "clearly established" substantive due-process right in Count Two.

**C.    Conclusion**

In summary, the Court concludes:

1.   Plaintiff fails to allege facts sufficient to establish personal jurisdiction over Legal Attache Thomas, and, therefore, the Court grants the Individual Capacity Defendants' Motion to Dismiss as to the claims against Thomas pursuant to Federal Rule of Civil Procedure 12(b)(2).

2.   The Court concludes the Individual Capacity Defendants are entitled to qualified immunity on Claims One and Two, the only claims in which they are named.[6]

The Court, therefore, grants the Individual Capacity Defendants' Motion to Dismiss and dismisses without prejudice Plaintiff's Claim One and Count One of Claim Two as to the Individual Capacity Defendants pursuant to Rule 12(b)(6). Because, as discussed above, Count Two of Claim Two alleges violation of a liberty interest that is not cognizable under substantive due process as a matter of law, further leave to amend would be futile.  Accordingly, the Court dismisses Count Two of Claim Two with prejudice as to the Individual Capacity Defendants.  *See* Fed. R. Civ. P. 15(a)(2).  *See also Carrico*, 656 F.3d at 1008.

---

[6] As a result of the Court's ruling on personal jurisdiction, this holding alternatively applies to Legal Attache Thomas.

**CONCLUSION**

For these reasons and construing all of Defendants' Motions as against Plaintiff's Proposed Second Amended Complaint, the Court:

1. **GRANTS in part** and **DENIES in part** the Official Capacity Defendants' Motion (#20) to Dismiss for Failure to State a Claim and for Lack of Jurisdiction. Accordingly, the Court **DISMISSES with prejudice** the following claims against the Official Capacity Defendants: Count Two of Claim Two, Claim Three, and Claim Four with respect to the right to interstate travel. The Court **DISMISSES without prejudice** Count One of Claim Two as to Defendants Kerry and Department of State only. The Court **DISMISSES without prejudice** Claim One; Claim Four with respect to the right to be free from false government stigmatization; and Claim Five.

2. The Court **GRANTS** the Individual Capacity Defendants' Motion (#23) to Dismiss and **DISMISSES without prejudice** Claim One and Count One of Claim Two. The Court **DISMISSES with prejudice** Count Two of Claim Two.

3. The Court grants Plaintiff leave to amend all claims dismissed without prejudice on the condition that Plaintiff can in good faith plead facts sufficient to satisfy the deficiencies discussed above and state a plausible claim on the merits.

53 – OPINION AND ORDER

The Court **FURTHER ORDERS** Plaintiff to file a Third Amended Complaint consistent with this Order **no later than April 25, 2014.**  Upon the filing of the Third Amended Complaint, the Court encourages the remaining Defendants to file their Answers so this matter may progress to dispositive-motion practice.  In any event, Defendants shall file their responsive pleading(s) to Plaintiff's Third Amended Complaint **no later than May 27, 2014.**

IT IS SO ORDERED.

DATED this 26th day of March, 2014.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge