JOYCE R. BRANDA
Acting Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

BRIGHAM J. BOWEN
ADAM D. KIRSCHNER
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-6289
Facsimile: (202) 616-8470
brigham.bowen@usdoj.gov
adam.kirshcner@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | | |
|---|---|---|
| JAMAL TARHUNI, | ) | CIV. NO. 3:13-CV-00001-BR |
| Plaintiff, | ) | |
| v. | ) | **DECLARATION OF ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES** |
| ERIC H. HOLDER, JR., *et al.*, | ) | |
| Defendants. | ) | |

I, ERIC H. HOLDER, JR., hereby state and declare as follows:

1.     I am the Attorney General of the United States and head of the United States Department of Justice ("DOJ"), an Executive Department of the United States. *See* 28 U.S.C §§ 501, 503, 509. The purpose of this declaration is to assert, at the request of the Federal Bureau of Investigation ("FBI"), and in my capacity as Attorney General and head of DOJ, a formal claim

1 – DECL. OF ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES
*Tarhuni v. Holder, et al.*, No. 3:13-CV-00001-BR

of the state secrets privilege in order to protect the national security interests of the United States. The statements made herein are based on my personal knowledge, on information provided to me in my official capacity, and on my evaluation of that information.

2. In the course of my official duties, I have been informed that Plaintiff Jamal Tarhuni is a naturalized U.S. citizen who left the United States in 2011 to make a trip to Libya. I understand that in January 2012, he was denied boarding on a flight returning to the United States, but that shortly after, he did return to the United States, and he has been here since that time.

3. I understand that Plaintiff asserts that his name is currently on the No Fly List, and he seeks declaratory relief finding that the placement of his name on the list violates his Fifth Amendment rights under the United States Constitution, and injunctive relief ordering, among other things, Defendants to give him notice of his inclusion on any Government watchlist, an opportunity to rebut evidence underlying that inclusion, and removal from any watchlist that affected his ability to return to United States.

4. I am advised that the Plaintiff seeks through discovery the production of classified and otherwise privileged information and has also filed a motion to compel this information in discovery. Defendants are opposing that motion and asserting applicable privileges. As described below, the disclosure of the information sought by Plaintiff through his discovery could reasonably be expected to cause significant harm to the national security.

5. I have read and carefully considered the classified declaration of John Giacalone, Executive Assistant Director, FBI National Security Branch. After careful and personal consideration of the matter, I have concluded that disclosure of the three categories of information described below, and in more detail in the classified FBI declaration, could

2 – DECL. OF ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES
*Tarhuni v. Holder, et al.*, No. 3:13-CV-00001-BR

reasonably be expected to cause significant harm to the national security, and I therefore formally assert the state secrets privilege over this information. The classified FBI declaration, which is available for the Court's *ex parte, in camera* review, describes in classified detail the information over which I am asserting the state secrets privilege. As Attorney General, I possess original classification authority under Section 1.3 of Executive Order (E.O. 13526) dated December 29, 2009. *See* 75 Fed. Reg. 707. I have determined that the classified FBI declaration is properly classified under Section 1.2 of E.O. 13526 because public disclosure of the information contained in that declaration also could reasonably be expected to cause significant harm to national security.

6. In unclassified terms, my privilege assertion encompasses information in the following categories:

- *Subject Identification*: Information that could tend to confirm or deny whether a particular individual was or was not the subject of an FBI investigation or intelligence operation. This includes the existence of any records about Plaintiff contained in the Terrorist Identities Datamart Environment ("TIDE"), which is classified in its entirety, as well as the contents of any TIDE records that might exist about Plaintiff, whether presently contained in the TIDE database or contained in any FBI counterterrorism investigative files about Plaintiff, should such exist. This also includes the contents of any FBI counterterrorism investigative or operational files about Plaintiff, should they exist.

- *Reasons for Investigation and Results*: Information that could tend to reveal the predicate for an FBI counterterrorism investigation or intelligence activity of a particular person, any information obtained during the course of such an investigation or intelligence operation, and the status and results of the investigation or operation. This includes information (if any) obtained by the FBI from the U.S. Intelligence Community related to the reasons for any investigation or operation and information regarding Plaintiff or any of his associates that could tend to reveal the predicate for, information obtained in, or results of a counterterrorism investigation or operation.

- *Sources and Methods*: Information that could tend to reveal whether particular sources and methods, such as classified policies and procedures, were used by the FBI in any counterterrorism investigation or intelligence activity (if any) of Plaintiff or his associates. This includes information related to whether court-ordered searches or surveillance, confidential human sources, and other investigative or operational sources and methods were used by the FBI in a counterterrorism investigation of or intelligence activity regarding a particular person, the reasons such methods were used, the status of the use of such sources and methods, and any results derived from such methods.

7. As indicated above and explained further below, I have determined that disclosure of information falling into the foregoing categories could reasonably be expected to cause significant harm to national security.

8. First, I concur with the determination of the FBI that the disclosure of the identities of subjects of FBI counterterrorism investigations or intelligence activity reasonably could be expected to cause significant harm to national security. As the FBI has explained, such disclosures would alert those subjects to the Government's interest in them and could cause them to attempt to flee, destroy evidence, or alter their conduct so as to avoid detection of their future activities, which would seriously impede law enforcement and intelligence officers' ability to determine their whereabouts or gain further intelligence on their activities. In addition, as the FBI has explained, knowledge that they were under investigation could enable subjects to anticipate the actions of law enforcement and intelligence officers, possibly leading to counter-surveillance that could place federal agents at higher risk, and to ascertain the identities of confidential informants or other intelligence sources, placing those sources at risk. Such knowledge could also alert associates of the subjects to the fact that the Government is likely aware of their associations with the subjects and cause them to take similar steps to avoid scrutiny.

4 – DECL. OF ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES
*Tarhuni v. Holder, et al.*, No. 3:13-CV-00001-BR

9.  Second, I agree with the FBI that disclosure that an individual is not a subject of an FBI counterterrorism investigation could likewise reasonably be expected to cause significant harm to national security. As the declaration explains, if the fact that some persons are not subject to investigation is disclosed, while the status of others is left unconfirmed, the disclosure would reveal that the FBI has had an investigative interest as to those other particular persons. Allowing such disclosures would enable individuals and terrorist groups alike to manipulate the system to discover whether they or their members are subject to investigation. Further, individuals who desire to commit terrorist acts could be motivated to do so upon discovering that they are not being monitored.

10. In addition, I agree with the judgment of the FBI that where an investigation of a subject has been closed, disclosure that an individual was formerly the subject of an FBI counterterrorism investigation or intelligence activity could also reasonably be expected to cause significant harm to national security. Again, I agree that, to the extent that an individual had terrorist intentions that were not previously detected, the knowledge that he or she is no longer the subject of investigative or intelligence interest could embolden him or her to carry out those intentions. Moreover, as the FBI indicates, the fact that an investigation is closed does not mean that the subjects have necessarily been cleared of wrongdoing, as closed cases are often reopened based on new information. Even if the former subjects are law abiding, the disclosure that they had been investigated could still provide valuable information to terrorists and terrorist organizations about the Government's intelligence and concerns, particularly where the former subjects have associates whom the FBI may still be investigating based on suspected ties to terrorist activity. Disclosure of the FBI's interest in the closed subject could alert such associates

to the interest in them and lead them to destroy evidence or alter their conduct so as to avoid detection of their future activities.

11. Third, I agree with the judgment of the FBI that disclosure of the reasons for and results from an FBI counterterrorism investigation or an intelligence activity --- whether the initial predicate for opening an investigation, information gained during the investigation, or the status or results of the investigation --- could also reasonably be expected to cause significant harm to national security. As the FBI has determined, such disclosures would reveal to subjects who are involved in or planning to undertake terrorist activities what the FBI or the intelligence community knows or does not know about their plans and the threat they pose to national security. Even if the subjects have no terrorist intentions, disclosure of the reasons they came under investigation may reveal sensitive intelligence information about them, their associates, or a particular threat that would harm other investigations. More generally, as the FBI also explains, disclosure of the reasons for an investigation could provide insights to persons intent on committing terrorist attacks as to what type of information is sufficient to trigger an inquiry by the United States Government, and what sources and methods the FBI may employ to obtain information about a person.

12. I also agree with the FBI that the disclosure of certain information that would tend to describe, reveal, confirm or deny the existence or use of FBI investigative or sources and methods, or techniques used in the counterterrorism investigations at issue in this case, could likewise be reasonably expected to cause significant harm to national security. This aspect of my privilege assertion includes information that would tend to reveal whether court-ordered searches or surveillance, confidential human sources, and other investigative sources and methods were

used in a counterterrorism investigation of a particular person, the reasons for and the status of the use of such sources and methods, and any results derived from such methods. The disclosure of such information could reveal not only the identities of particular subjects but also the steps taken by the FBI in counterterrorism matters.

13. Any effort to draw distinctions between disclosures that would and those that would not cause harm to national security interests would itself reveal sensitive FBI counterterrorism investigative or intelligence information. If the Government were to disclose that one individual is not now nor ever has been the subject of an investigation, but resist such disclosure when an individual is currently or once was the subject of a national security investigation, then the very act of resisting disclosure would itself reveal the information that the Government seeks to protect. For this reason, the information at issue --- whether someone is, is no longer, or never has been the subject of an FBI counterterrorism investigation --- must be treated uniformly. Any type of disclosure, whether affirmative or negative, would implicate the harms described above.

14. Any further elaboration concerning the foregoing matters on the public record would reveal information that could cause the very harms my assertion of the state secrets privilege is intended to prevent. The classified FBI declaration, submitted for *ex parte, in camera* review, provides a more detailed explanation of the information over which I am asserting the privilege and the harms to national security that would result from disclosure of that information.

15. On September 23, 2009, I announced a new Executive Branch policy governing the assertion and defense of the state secrets privilege in litigation. Under this policy, the Department of Justice will defend an assertion of the state secrets privilege in litigation, and seek dismissal of a claim on that basis, only when necessary to protect against the risk of significant

7 – DECL. OF ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES
*Tarhuni v. Holder, et al.*, No. 3:13-CV-00001-BR

harm to national security. *See* Exhibit 1 (State Secrets Policy), § 1(A). The policy provides further that an application of a privilege assertion must be narrowly tailored and that dismissal be sought pursuant to the privilege assertion only when necessary to prevent significant harm to national security. *Id.* § 1(B). Moreover, "[t]he Department will not defend an invocation of the privilege in order to: (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States Government; (iii) restrain competition; or (iv) prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security." *Id.* § 1(C). The policy also establishes detailed procedures for review of a proposed assertion of the state secrets privilege in a particular case. *Id.* § 2. Those procedures require submissions by the relevant Government departments or agencies specifying "(i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; [and] (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm." *Id.* § 2(A). Based on my personal consideration of the matter, I have determined that the requirements for an assertion and defense of the state secrets privilege have been met in this case in accord with the September 2009 State Secrets Policy.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of September, 2014, in Washington, D.C.

_____
ERIC H. HOLDER, JR.
ATTORNEY GENERAL OF THE UNITED STATES

8 – DECL. OF ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES
*Tarhuni v. Holder, et al.*, No. 3:13-CV-00001-BR

# Declaration of Eric H. Holder, Jr.

# Exhibit 1

*Tarhuni v. Holder*, No. 13-cv-1 (D. Or.)



# Office of the Attorney General
## Washington, D.C. 20530

September 23, 2009

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES
MEMORANDUM FOR THE HEADS OF DEPARTMENT COMPONENTS

FROM:    THE ATTORNEY GENERAL

SUBJECT:    Policies and Procedures Governing Invocation of the State Secrets Privilege

I am issuing today new Department of Justice policies and administrative procedures that will provide greater accountability and reliability in the invocation of the state secrets privilege in litigation. The Department is adopting these policies and procedures to strengthen public confidence that the U.S. Government will invoke the privilege in court only when genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests. The policies and procedures set forth in this Memorandum are effective as of October 1, 2009, and the Department shall apply them in all cases in which a government department or agency thereafter seeks to invoke the state secrets privilege in litigation.

## 1. Standards for Determination

**A. Legal Standard.** The Department will defend an assertion of the state secrets privilege ("privilege") in litigation when a government department or agency seeking to assert the privilege makes a sufficient showing that assertion of the privilege is necessary to protect information the unauthorized disclosure of which reasonably could be expected to cause significant harm to the national defense or foreign relations ("national security") of the United States. With respect to classified information, the Department will defend invocation of the privilege to protect information properly classified pursuant to Executive Order 12958, as amended, or any successor order, at any level of classification, so long as the unauthorized disclosure of such information reasonably could be expected to cause significant harm to the national security of the United States. With respect to information that is nonpublic but not classified, the Department will also defend invocation of the privilege so long as the disclosure of such information reasonably could be expected to cause significant harm to the national security of the United States.

**B. Narrow Tailoring.** The Department's policy is that the privilege should be invoked only to the extent necessary to protect against the risk of significant harm to national security. The Department will seek to dismiss a litigant's claim or case on the basis of the state secrets privilege only when doing so is necessary to protect against the risk of significant harm to national security.

Memorandum for Heads of Executive Departments and Agencies                           Page 2
Memorandum for the Heads of Department Components
Subject: State Secrets Privilege

**C. Limitations.** The Department will not defend an invocation of the privilege in order to: (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States government; (iii) restrain competition; or (iv) prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security.

2. **Initial Procedures for Invocation of the Privilege**

    **A. Evidentiary Support.** A government department or agency seeking invocation of the privilege in litigation must submit to the Division in the Department with responsibility for the litigation in question[1] a detailed declaration based on personal knowledge that specifies in detail: (i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm; and (iv) any other information relevant to the decision whether the privilege should be invoked in litigation.

    **B. Recommendation from the Assistant Attorney General.** The Assistant Attorney General for the Division responsible for the matter shall formally recommend in writing whether or not the Department should defend the assertion of the privilege in litigation. In order to make a formal recommendation to defend the assertion of the privilege, the Assistant Attorney General must conclude, based on a personal evaluation of the evidence submitted by the department or agency seeking invocation of the privilege, that the standards set forth in Section 1(a) of this Memorandum are satisfied. The recommendation of the Assistant Attorney General shall be made in a timely manner to ensure that the State Secrets Review Committee has adequate time to give meaningful consideration to the recommendation.

3. **State Secrets Review Committee**

    **A. Review Committee.** A State Secrets Review Committee consisting of senior Department of Justice officials designated by the Attorney General will evaluate the

---

[1] The question whether to invoke the privilege typically arises in civil litigation. Requests for invocation of the privilege in those cases shall be addressed to the Civil Division. The question whether to invoke the privilege also may arise in cases handled by the Environment and Natural Resources Division (ENRD), and requests for invocation of the privilege shall be addressed to ENRD in those instances. It is also possible that a court may require the Government to satisfy the standards for invoking the privilege in criminal proceedings. *See United States v. Araf*, 533 F.3d 72, 78-80 (2d Cir. 2008); *but see United States v. Rosen*, 557 F.3d 192, 198 (4th Cir. 2009). In such instances, requests to submit filings to satisfy that standard shall be directed to the National Security Division.

*Memorandum for Heads of Executive Departments and Agencies*  Page 3
Memorandum for the Heads of Department Components
Subject: State Secrets Privilege

Assistant Attorney General's recommendation to determine whether invocation of the privilege in litigation is warranted.

**B. Consultation.** The Review Committee will consult as necessary and appropriate with the department or agency seeking invocation of the privilege in litigation and with the Office of the Director of National Intelligence. The Review Committee must engage in such consultation prior to making any recommendation against defending the invocation of the privilege in litigation.

**C. Recommendation by the Review Committee.** The Review Committee shall make a recommendation to the Deputy Attorney General, who shall in turn make a recommendation to the Attorney General.[2] The recommendations shall be made in a timely manner to ensure that the Attorney General has adequate time to give meaningful consideration to such recommendations.

4. **Attorney General Approval**

**A. Attorney General Approval.** The Department will not defend an assertion of the privilege in litigation without the personal approval of the Attorney General (or, in the absence or recusal of the Attorney General, the Deputy Attorney General or the Acting Attorney General).

**B. Notification to Agency or Department Head.** In the event that the Attorney General does not approve invocation of the privilege in litigation with respect to some or all of the information a requesting department or agency seeks to protect, the Department will provide prompt notice to the head of the requesting department or agency.

**C. Referral to Agency or Department Inspector General.** If the Attorney General concludes that it would be proper to defend invocation of the privilege in a case, and that invocation of the privilege would preclude adjudication of particular claims, but that the case raises credible allegations of government wrongdoing, *the Department will refer* those allegations to the Inspector General of the appropriate department or agency for further investigation, and will provide prompt notice of the referral to the head of the appropriate department or agency.

---

[2] In civil cases, the review committee's recommendation should be made through the Associate Attorney General to the Deputy Attorney General, who shall in turn make a recommendation to the Attorney General.

Memorandum for Heads of Executive Departments and Agencies         Page 4
Memorandum for the Heads of Department Components
Subject:  State Secrets Privilege

## 5. Reporting to Congress

The Department will provide periodic reports to appropriate oversight committees of Congress with respect to all cases in which the Department invokes the privilege on behalf of departments or agencies in litigation, explaining the basis for invoking the privilege.

## 6. Classification Authority

The department or agency with classification authority over information potentially subject to an invocation of the privilege at all times retains its classification authority under Executive Order 12958, as amended, or any successor order.

## 7. No Substantive or Procedural Rights Created

This policy statement is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.