IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMAL TARHUNI,

              Plaintiff,

v.

LORETTA LYNCH, in her official capacity
as Attorney General of the United
States; FEDERAL BUREAU OF
INVESTIGATION; JAMES B. COMEY, in his
official capacity as Director of the
Federal Bureau of Investigation; FBI
TERRORISM SCREENING CENTER; CHRISTOPHER
M. PIEHOTA, in his official capacity as
Director of the FBI Terrorism Screening
Center,

              Defendants.

3:13-cv-00001-BR

OPINION AND ORDER


**STEVEN GOLDBERG**
3525 S.E. Brooklyn Street
Portland, OR 97202
(971) 409-2918

**THOMAS H. NELSON**
Thomas H. Nelson & Associates
P.O. Box 1211
Welches, OR 97067
(503) 622-3262

           Attorneys for Plaintiff


1 - OPINION AND ORDER

BRIGHAM J. BOWEN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 514-6289

ADAM D. KIRSCHNER
United States Department of Justice
Civil Division, Federal Programs
20 Massachusetts Avenue, N.W., Room 7126
Washington, DC 20530
(202) 353-9265

          Attorneys for Defendants Loretta Lynch, Federal
          Bureau of Investigation, James B. Comey, FBI
          Terrorism Screening Center, and Christopher M.
          Piehota

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion
(#92) to Dismiss for Lack of Jurisdiction.  The Court heard oral
argument on June 25, 2015.

Through the course of litigating this Motion, the parties
have relied extensively on factual developments that are not
included in Plaintiff's Third Amended Complaint (#53).
Accordingly, on August 18, 2015, the Court **CONVERTED** Defendants'
Motion (#92) to Dismiss for Lack of Jurisdiction into a Motion
for Summary Judgment pursuant to Federal Rule of Civil Procedure
12(d) and provided the parties with an opportunity to submit no
later than September 1, 2015, additional materials appropriate
for summary-judgment motions.

2 - OPINION AND ORDER

For the reasons that follow, the Court **GRANTS** Defendants'
Motion and **DISMISSES** this matter **with prejudice**.

## FACTUAL BACKGROUND

The following facts are undisputed:

I.    **The No-Fly List**

Defendant Federal Bureau of Investigation (FBI), through
Defendant Terrorism Screening Center (TSC), is responsible for
development and maintenance of the No-Fly List (List), which
consists of the names of individuals whom airlines serving or
flying within the United States may not transport.  Most
individuals on the List, including Plaintiff, are prohibited from
flying into, out of, or over Canadian airspace as well as
American airspace.

The No-Fly List is a subset of the Terrorist Screening
Database (TSDB), which is a consolidated terrorist watchlist
maintained by the TSC that contains sensitive but unclassified
identifying information about those in the TSDB.  The TSDB itself
does not contain any substantive derogatory intelligence
information or classified national-security information.
Nominations to the TSDB are made by various law-enforcement and
national-security agencies.  Nominations to the TSDB must contain
sufficient information to satisfy "minimum identifying criteria
to allow screeners to be able to discern a match, and minimum

3 - OPINION AND ORDER

substantive derogatory criteria to establish a reasonable suspicion that the individual is a known or suspected terrorist." Decl. of Steven Goldberg (#105), Ex. A at ¶ 15.  The TSC, through the TSDB, provides terrorist identity information to various law-enforcement and screening agencies and entities.

Nominations of an individual to be placed on the No-Fly List are evaluated by the TSC to determine whether the derogatory information provided by the nominating agency establishes a reasonable suspicion that the individual meets additional heightened derogatory criteria that goes above and beyond the criteria required for inclusion in the broader TSDB.  An individual may be included on the No-Fly List if the individual poses:

> (1) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of piracy, or a threat to airline, passenger, or civil aviation security);
>
> (2) a threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland;
>
> (3) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations (as defined by 10 U.S.C. § 2801(c)(4)), U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; or

> (4) a threat of engaging in or conducting a violent act
> of terrorism and who is operationally capable of doing
> so.

Goldberg Decl. Ex. A at ¶ 17.

Under procedures in place at the time that Plaintiff
initiated this matter, individuals placed on the List (including
Plaintiff) were not given notice that they were on the List, were
not advised of the factual basis for placement on the List, and
did not have the right to a hearing before a neutral decision-
maker to challenge their placement on the List.

Individuals who wished to challenge their placement on the
List could submit an inquiry to the Department of Homeland
Security Traveler Redress Inquiry Program (DHS TRIP) together
with any information that the individual believed could be
relevant to his placement on the List.  DHS TRIP then transmitted
the inquiry to the TSC, which determined whether any action
should be taken.  Subject to judicial review, TSC was the final
arbiter of whether an individual was removed from the List.

## II.   **Plaintiff's Inclusion on the No-Fly List**

Plaintiff, an American citizen of Libyan descent, has lived
in the United States for 41 years, became a United States citizen
in 2006, and is a resident of Oregon.  Plaintiff is married with
four children.

Since the 1980s Plaintiff has considered himself an opponent
of Muammar Gaddafi's regime in Libya.  In the wake of the

revolution in Libya overthrowing the Gaddafi regime, Plaintiff traveled to Libya three times in 2011 and early 2012 as a volunteer with Medical Teams International (MTI), a nongovernmental organization based in Tigard, Oregon.  While in Libya Plaintiff provided cultural, language, and logistical assistance to MTI by helping deliver medicine, medical equipment, and supplies to Libya.  During these trips Plaintiff often worked with Libyan and Tunisian government and humanitarian organizations.  Throughout his time in Libya Plaintiff facilitated the clearance of shipping containers of medical supplies through customs; ordered the shipment of additional containers of medical supplies requested by personnel working at hospitals like the Benghazi Medical Center, Al Jala Hospital, and Al Hawray Hospital; and coordinated travel of nurses from the United States to Benghazi, Libya.  Plaintiff facilitated the delivery of supplies through Tunisia and Egypt and visited refugee camps in Tataouine, Remada, and Dahiba, Tunisia, with the help of the Tunisian Red Crescent.  Security for Plaintiff's travels in Libya was provided by fighters opposed to the Gaddafi regime.

Near the end of his third and final trip to Libya with MTI, Plaintiff arranged to return to Portland on January 17, 2012. Although he previously did not have any difficulty flying between

Tunisia or Egypt and the United States, Plaintiff was denied boarding on his plane on January 17, 2012.

After learning he was on the No-Fly List, Plaintiff contacted the United States Embassy in Tunis, Tunisia. Embassy personnel asked Plaintiff to come to the Embassy in Tunis on January 24, 2012, to meet with undisclosed United States agency personnel.

On January 24, 2012, Plaintiff arrived at the American Embassy in Tunis with a Tunisian attorney and was met by Brian Zinn, an FBI Agent from Portland, Oregon, and another individual who was the head of Embassy Security. Agent Zinn escorted Plaintiff to an interview room in which another FBI agent, Horace Thomas, was also present. Agent Zinn advised Plaintiff that he and Thomas were there to discuss his work in Libya.

In the presence of Plaintiff's Tunisian attorney, Agent Zinn interviewed Plaintiff for 3½ hours as to his activities in Libya; the names of people he worked with; his views on terrorist organizations; whether he had contacts with any terrorist, mujahideen, or Islamist groups; whether he had knowledge of any planned attack on the United States or its allies; and his religious views and practices.

During a break in the interview Agent Zinn told Plaintiff that he would be permitted to return to the United States if he passed a polygraph test. Plaintiff agreed to take the test.

When another FBI agent asked Plaintiff to waive his
constitutional rights before taking the test, however, Plaintiff
refused after consulting with his American attorney, and the
interview was ended.

On February 13, 2012, Plaintiff returned to the United
States by air after making arrangements to do so with United
States personnel at the Embassy in Tunis and Plaintiff's American
counsel.  Plaintiff, however, remained on the No-Fly List and
remained unable to board a commercial aircraft after his return
to the United States.

Plaintiff submitted a DHS TRIP inquiry seeking review of his
placement on the No-Fly List.  Consistent with procedures in
place at that time, Plaintiff received a letter from DHS TRIP on
July 25, 2013, advising him that DHS "'conducted a review of any
applicable records in consultation with other federal agencies,
as appropriate.  It has been determined that no changes or
conditions are warranted at this time.'"  In the July 25, 2013,
letter DHS TRIP advised Plaintiff of his right to request an
administrative appeal, but the letter did not provide any
information as to the basis for Plaintiff's inclusion on the
List.

III. **Defendants' Revision of DHS TRIP Procedures**

On June 24, 2014, during the pendency of this matter, this Court held in *Latif v. Holder* that Defendants'[1] prior DHS TRIP procedures were constitutionally insufficient. 28 F. Supp. 3d 1134 (2014). As a result of the Court's Opinion and Order in *Latif*, Defendants revised DHS TRIP procedures as follows:

If an individual is not allowed to board a commercial flight, that individual may submit an inquiry to DHS TRIP. If DHS TRIP verifies that individual is on the No-Fly List, then DHS TRIP will send a letter to the individual notifying him of his status on the List and providing the individual with the option to receive and/or to submit additional information. If the traveler elects to receive additional information, DHS TRIP will provide a second letter with additional information that includes the specific criteria under which the individual has been placed on the List and, to the extent feasible in light of national-security and law-enforcement interests, an unclassified summary of the information that supports the individual's placement on the No-Fly List. The amount of information provided to the individual will vary on a case-by-case basis. DHS TRIP will not provide an unclassified summary of the reasons for placement on

---

[1] Defendants in this case are also defendants in *Latif v. Holder*.

the No-Fly List if the national-security and law-enforcement
interests at stake make doing so impossible.

The second letter sent by DHS TRIP will include an
invitation for the individual to submit written responses
including exhibits or other materials that the individual deems
relevant.  The Administrator of the Transportation Security
Administration (TSA) or his designee will review the individual's
submission together with all information that the government
relies on to maintain the individual's placement on the No-Fly
List.  TSA will then provide the individual with a final written
determination including the basis for the decision (to the extent
feasible in light of the national-security and law-enforcement
interests at stake) and will notify the individual of his ability
to seek further judicial review.

## IV.  Defendants' Reconsideration of Plaintiff's DHS TRIP Inquiry

Following the Court's ruling in *Latif*, the Court ordered
Defendants in this case by Case-Management Order (#79) issued
October 3, 2014, to reconsider Plaintiff's DHS TRIP inquiry under
the newly-promulgated procedures.

By letter dated November 24, 2014, Defendants notified
Plaintiff that he remained on the No-Fly List because Defendants
identified Plaintiff as an "individual who 'may be a threat to
civil aviation or national security'" and specifically noted
Plaintiff is "an individual who represents a threat of engaging

in or conducting a violent act of terrorism and who is operationally capable of doing so."  As to the unclassified summary of reasons for Plaintiff's placement on the No-Fly List, Defendants informed Plaintiff that "[t]he Government has concerns about the nature and purpose of Jamal Tarhuni's travel to Libya in 2011 and 2012."  The letter invited Plaintiff to provide any responsive information no later than December 15, 2014.

After obtaining an extension of the deadline to submit responsive materials, Plaintiff provided a written response to Defendants by letter dated January 23, 2015, regarding their reasons for placing Plaintiff on the No-Fly List.  On February 23, 2015, Defendants advised Plaintiff that he had been removed from the No-Fly List "based on the totality of available information, including your submissions to DHS TRIP."

## V.   **Plaintiff's Claims for Relief**

Plaintiff asserts two claims for relief against Defendants.

In Claim One Plaintiff brings a substantive due-process claim against Defendants in which he alleges Defendants infringed Plaintiff's fundamental liberty interest in international travel by placing him on the No-Fly List despite the fact that "Plaintiff presents absolutely no security threat to commercial aviation or to his country in any manner."  Plaintiff seeks an injunction against all Defendants requiring Plaintiff's immediate

removal from the No-Fly List and a declaration that the following

acts have violated Plaintiff's substantive due-process rights:

> Defendants [*sic*] placement of plaintiff on the No Fly
> List, reliance on plaintiff's placement on the List
> while outside of the U.S. to bar his return to the
> U.S., and use of plaintiff's presence on the List to
> require him to participate in an interrogation which
> could result in him making incriminating statements
> without the effective assistance of counsel in order to
> be removed from the List.

Third Am. Compl. at 16.

In Claim Two Plaintiff brings a procedural due-process claim

against Defendants in which Plaintiff alleges Defendants deprived

him of his protected liberty interest in international travel

without affording him adequate post-deprivation notice and the

opportunity to be heard.   Plaintiff seeks an injunction requiring

> a post-deprivation legal mechanism be established that
> affords plaintiff notice of his placement on the No Fly
> List, the reason for his placement on the No Fly List
> and evidence supporting his inclusion on the List, and
> a meaningful and timely hearing in which he can
> challenge his continued inclusion on the List with an
> independent decision-maker.

Third Am. Compl. at 17.   In addition, Plaintiff seeks a

declaration that Defendants'

> placement of plaintiff on the No Fly List without
> informing him of such placement, of the reason or basis
> for his inclusion on the List, and without providing
> plaintiff a meaningful and timely opportunity to
> challenge his continued inclusion on the List,
> including the provision of an independent forum in
> which plaintiff might secure the removal of his name
> from the List

12 - OPINION AND ORDER

violated Plaintiff's procedural due-process rights.    Third Am.
Compl. at 16.


## STANDARDS

Summary judgment is appropriate when there is not a "genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." *Washington Mut. Ins. v. United
States*, 636 F.3d 1207, 1216 (9th Cir. 2011).    *See also* Fed. R.
Civ. P. 56(a).    The moving party must show the absence of a
dispute as to a material fact.    *Rivera v. Philip Morris, Inc.*,
395 F.3d 1142, 1146 (9th Cir. 2005).    In response to a properly
supported motion for summary judgment, the nonmoving party must
go beyond the pleadings and show there is a genuine dispute as to
a material fact for trial.    *Id.*    "This burden is not a light one
. . . .    The non-moving party must do more than show there is
some 'metaphysical doubt' as to the material facts at issue."    *In
re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)
(citation omitted).

A dispute as to a material fact is genuine "if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986)).    The court must draw all
reasonable inferences in favor of the nonmoving party.    *Sluimer*

13 - OPINION AND ORDER

*v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

Defendants move for summary judgment on Plaintiff's Claims One and Two on the basis that Plaintiff's removal from the No-Fly List has deprived Plaintiff of standing to seek injunctive relief based on his placement on the No-Fly List, and, therefore, this action is moot.

In his Memorandum (#94) in Opposition to Defendants' Motion to Dismiss, Plaintiff abandons Claim One (substantive due process) as to injunctive relief and all of Claim Two (procedural due process). Accordingly, Plaintiff's sole contention is that Claim One for declaratory relief remains justiciable notwithstanding his recent removal from the No-Fly List.

Although the doctrines of standing and mootness are related, the doctrine of mootness applies in this instance because the events that allegedly mooted Plaintiff's claims occurred during the pendency of these proceedings. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189-92 (2000). *See also Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 785 (9th Cir. 2006).

## I.   Mootness Standard

"A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III — 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike Inc.*,

133 S. Ct. 721, 726 (2013)(quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 133 S. Ct. at 727 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). "'A case becomes moot whenever it loses its character as a present, live controversy . . . . The question is not whether the precise relief sought at the time [the case] was filed is still available. The question is whether there can be any effective relief.'" *McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015)(quoting *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 559 (9th Cir. 2009)(ellipses and bracketed text in original)).

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012). *See also Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013). "[V]oluntary cessation can yield mootness if a 'stringent' standard is met: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th

Cir. 2014)(quoting *Laidlaw Envtl. Servs.*, 528 U.S. at 189).  *See also McCormack*, 788 F.3d at 1024.

When the government changes a policy, the court must presume the government entity is acting in good faith.  *Rosebrock*, 745 F.3d at 971.  Nonetheless, "when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again."  *Id.  See also Bell*, 709 F.3d at 898-99.  "A presumption of good faith, however, cannot overcome a court's wariness of applying mootness under 'protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.'"  *McCormack*, 788 F.3d at 1025 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953)).

"[W]hile a statutory change 'is usually enough to render a case moot,' an executive action that is not governed by any clear or codified procedures cannot moot a claim."  *Id.* (quoting *Bell*, 709 F.3d at 898-900).  When determining whether an executive action "not reflected in statutory changes or even in changes in ordinances or regulations" is sufficiently definitive to render a case moot, the court considers the following factors: (1) whether "the policy change is evidenced by language that is 'broad in scope and unequivocal in tone,'" (2) whether "the policy change fully 'addresses all of the objectionable measures

that [the Government] officials took against the plaintiffs in
th[e] case,'" (3) whether the case in question was the "'catalyst
for the agency's adoption of the new policy,'" (4) whether "the
policy has been in place for a long time when we consider
mootness," and (5) whether the government has engaged in similar
conduct to that challenged by the plaintiff since the
implementation of the new policy.  *Rosebrock*, 745 F.3d at 972
(quoting *White v. Lee*, 227 F.3d 1214, 1243-44 (9th Cir.
2000)(bracketed text in original)).  "On the other hand, [the
court is] less inclined to find mootness where the 'new policy
. . . could be easily abandoned or altered in the future.'"
*Rosebrock*, 745 F.3d at 972 (quoting *Bell*, 709 F.3d at 901).

## II.  Analysis

Defendants contend their removal of Plaintiff from the No-
Fly List moots this matter pursuant to *Rosebrock*.  Defendants
note their disclosure on the record that Plaintiff had been
removed from the No-Fly List was significantly more public and
definitive than the intra-agency email in *Rosebrock* in which
defendants announced a change in the challenged policy and which
the *Rosebrock* court found sufficient to moot that case.  *See*
*Rosebrock*, 745 F.3d at 972-74.

Plaintiff, on the other hand, contends there is nothing to
stop Defendants from placing him back on the No-Fly List after
termination of this litigation, and, in any event, Plaintiff

still does not know the specific reasons for his placement on the
No-Fly List.  Plaintiff also contends he retains a justiciable
claims because he intends to return to Libya to visit family and
conduct humanitarian work.  Without knowing specifically why he
was placed on the No-Fly List, Plaintiff asserts he may be put on
the List as a result of future travels.  Accordingly, Plaintiff
contends this case is not moot, and, therefore, he may proceed
with his Claim One for a declaratory judgment.

The Court concludes the voluntary-cessation doctrine does
not apply here because Defendants' reconsideration of Plaintiff's
DHS TRIP inquiry was not a voluntary act in any real sense.
Although Defendants filed a Motion (#65) to Remand Case to Agency
in which they sought to delay these proceedings until they could
reconsider Plaintiff's DHS TRIP application under newly-crafted
procedures, that Motion was a direct response to this Court's
order in *Latif* in which the Court held the same procedures under
which Defendants handled Plaintiff's DHS TRIP inquiry in this
case were unconstitutional.  In other words, Defendants' decision
in this case to abandon their original position and to seek leave
to reconsider Plaintiff's DHS TRIP application under their newly-
crafted procedures was a direct response to the Court's order in
*Latif*, an order that would also have been issued in this case if
Defendants had continued to litigate Plaintiff's procedural due-
process claim.  As noted, based on the Court's decision in *Latif*

the Court issued a Case-Management Order (#79) in this case on
October 3, 2014, in which it provided the direct judicial
imprimatur for Defendants' reconsideration of Plaintiff's DHS
TRIP inquiry.[2]

During the course of their reconsideration and after
reviewing information submitted by Plaintiff pursuant to the
procedures promulgated after the Court's decision in *Latif*,
Defendants determined Plaintiff did not meet the criteria to be
included on the No-Fly List.  Although Defendants certainly
exercised their judgment when they determined whether Plaintiff
met the criteria for placement on the No-Fly List, that judgment
was tempered by the bounds of the Court's order in *Latif* with
respect to the procedures that Defendants were required to follow
during reconsideration and the substantive criteria for placement
on the No-Fly List.  Unlike more typical voluntary-cessation
cases, when Defendants removed Plaintiff from the No-Fly List
they were not exercising broad discretion as is the case when the
government chooses on its own to change a policy or a private
party elects to alter its behavior.  On this record, therefore,
the Court concludes the voluntary-cessation doctrine does not
apply.

_____

[2] The Court does not express any opinion as to the
constitutional sufficiency of Defendants' new DHS TRIP
procedures.

As noted, the only remedy Plaintiff seeks at this stage of the proceedings is a declaration that Plaintiff's placement on the No-Fly List violated his substantive due-process rights. Such a declaration, however, would not have any effect on Plaintiff's substantive legal rights because Plaintiff is no longer on the No-Fly List. Instead the declaration that Plaintiff seeks would only serve to provide Plaintiff with the satisfaction of knowing that Defendants' original placement of Plaintiff on the No-Fly List was unlawful. In other words, there is not any effective relief that this Court can provide to Plaintiff that will affect Plaintiff's current legal rights. Accordingly, this case is moot because "the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *See Already, LLC*, 133 S. Ct. at 727.

Even if the voluntary-cessation doctrine applied to this case, Defendants have carried their "heavy burden" to demonstrate Plaintiff's placement on the No-Fly List based on current information will not recur. *See Rosebrock*, 745 F.3d at 971. Defendants have twice stated on the public record that Plaintiff is no longer on the No-Fly List and will not be placed on the List based on the government's current information. As noted, Defendants informed Plaintiff in a letter dated February 23, 2015, that was filed in the record that he was no longer on the No-Fly List "based on the totality of available information,

21 - OPINION AND ORDER

including your submissions to DHS TRIP." Joint Status Rept.
(#89), Ex. 2. Moreover, during the pendency of this Motion and
in response to questions from the Court, Defendants also filed
the Declaration (#99) of G. Clayton Grigg, Deputy Director of
Operations at the TSC, in which he stated:  "Mr. Tarhuni will not
be placed back on the No Fly List based on the currently
available information."

Although the *Rosebrock* factors do not fit neatly within the
context of an individualized determination (as opposed to a
general change in policy), the Court concludes the principles
expressed in *Rosebrock* support a finding that this case is now
moot. Defendants' statements regarding Plaintiff's presence on
the No-Fly List and the prospect of his being placed back on the
No-Fly List are unequivocal. Moreover, in the more than six
months since Plaintiff's removal from the No-Fly List, Defendants
have acted in a manner consistent with a genuine change in
Defendants' assessment of Plaintiff's inclusion on the List.

Unlike in *McCormack*, there is not any evidence in this
record from which the Court can conclude Defendants'
"'abandonment seems timed to anticipate suit, and there is
probability of resumption.'" *See McCormack*, 788 F.3d at 1025
(quoting *W.T. Grant Co.*, 345 U.S. at 632 n.5). To the contrary,
the notion that the government would remove from the No-Fly List
an individual whom Defendants believe is, in fact, "an individual

who represents a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so" for the mere purpose of concluding this litigation is, to say the least, far-fetched.

Finally, although the Court notes Defendants' assurances regarding Plaintiff's placement on the No-Fly List do not foreclose the possibility that Plaintiff may again be placed on the List if new information became available in the future, such a conjectural possibility cannot form the basis for this Court to retain subject-matter jurisdiction over this case.[3]  If Plaintiff is placed on the No-Fly List in the future, the courthouse door will again be open to him at that time.

Accordingly, on this record the Court concludes Plaintiff's claims are moot and must be dismissed with prejudice.

---

[3] In the Declaration of Steven Goldberg (#105) submitted in response to this Court's conversion of this Motion to a motion for summary judgment, Plaintiff requests this Court allow further discovery even if the Court finds this case not justiciable.  On the record before the Court, however, there is not any reason to believe further discovery would affect the justiciability issues that mandate dismissal of this action at this time.

## CONCLUSION

For these reasons the Court **GRANTS** Defendants' Motion (#92) to Dismiss for Lack of Jurisdiction and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 8th day of September, 2015.

ANNA J. BROWN
United States District Judge