IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMAL TARHUNI,

                    Plaintiff,

        v.

JEFFERSON B. SESSIONS, III, in his
official capacity as Attorney General
of the United States; CHRISTOPHER A.
WRAY, in his official capacity as
Director of the Federal Bureau of
Investigation; and CHRISTOPHER M.
PIEHOTA, in his official capacity as
Director of the Terrorist Screening
Center,

                    Defendants.

3:13-cv-00001-BR

OPINION AND ORDER

**CELIA RUTH CHOY**
Munger, Tolles & Olson LLP
1155 F. Street NW
Washington, DC 20010
(202) 220-1106

**DAVID HALLECK FRY**
**NICHOLAS DANIEL FRAM**
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000

**ROSE LEDA EHLER**
Munger, Tolles & Olson LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100

**AMY EDWARDS**
Stoel Rives LLP
760 S.W. Ninth Avenue, Suite 3000
Portland, OR 97205
(503) 224-3380

Attorneys for Plaintiff

**BRIGHAM J. BOWEN**
**SAMUEL M. SINGER**
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 514-6289

**ADAM D. KIRSCHNER**
United States Department of Justice
Civil Division, Federal Programs
20 Massachusetts Avenue, N.W., Room 7126
Washington, DC 20530
(202) 353-9265

Attorneys for Defendants Jefferson B. Sessions,
III; Federal Bureau of Investigation; Christopher
A. Wray; and Christopher M. Piehota

**BROWN, Senior Judge.**

This matter comes before the Court on Defendants' Motion
(#149) to Dismiss Fourth Amended Complaint.  On May 30, 2018, the
Court provided its tentative rulings to the parties and gave them
an opportunity to request supplemental briefing to address the
Court's analysis in those rulings.  On June 13, 2018, the Court
granted in part Defendants' request for supplemental briefing and

permitted Defendants to file a supplemental memorandum regarding Plaintiff's procedural due-process claim. *See* Order (#153). Defendants filed their Supplemental Memorandum (#154) on June 27, 2018. Plaintiff filed his Response (#155) to Defendants' Supplemental Memorandum on July 11, 2018. The Court has reviewed the entire record on this Motion and concludes it is sufficiently developed to resolve without oral argument.

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion and **DISMISSES** Plaintiff's Claim Two insofar as it is premised on Plaintiff's alleged liberty interest in freedom from false government stigmatization. The Court, however, declines to dismiss Plaintiff's Fourth Amended Complaint in any other respect.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Fourth Amended Complaint (#141) and assumed to be true at this stage of the proceedings.

In his Fourth Amended Complaint Plaintiff brings four claims based on his January 2012 placement on the No-Fly List and in the Terrorist Screening Database (TSDB). As explained below, Plaintiff was removed from the No-FLy List on February 23, 2015. Plaintiff alleges, and this Court assumes for purposes of this Motion, that he, nonetheless, remains in the TSDB.

## I.  The TSDB and the No-Fly List

Plaintiff's Fourth Amended Complaint contains allegations regarding the No-Fly List, TSDB, and Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) procedures that are generally consistent with the undisputed facts as they have been represented on the record in this case and other cases concerning the TSDB and No-Fly List in this district and in districts across the country.  Where necessary to provide context and to assist with the Court's analysis herein, the Court takes judicial notice of facts that may not be included in Plaintiff's Fourth Amended Complaint but are consistent with Plaintiff's allegations and that are not subject to reasonable dispute in light of the history of this and related litigation.

Through Defendant Terrorism Screening Center (TSC) Defendant Federal Bureau of Investigation (FBI) is responsible for the development and maintenance of the No-Fly List, which consists of the names of individuals whom airlines serving or flying within the United States may not transport.  Most individuals on the No-Fly List are prohibited from flying into, out of, or over Canadian airspace as well as American airspace.

The No-Fly List is a subset of the TSDB, which is a consolidated terrorist watchlist maintained by the TSC that contains unclassified personally identifying information about those in the database.  To nominate an individual to the TSDB the

government must have "substantive derogatory criteria to establish a reasonable suspicion that the individual is a known or suspected terrorist." Fourth Am. Compl. (#141) at ¶ 13. That standard requires "articulable facts which, taken together with rational inferences, reasonably warrant the determination that an individual is known or suspected to be or has been engaged in conduct constituting, in preparation for, in aid of or related to terrorism and terrorist activities." *Id.* Through the TSDB the TSC provides terrorist identity information to various law-enforcement and screening agencies and entities, including the Transportation Security Administration (TSA) and U.S. Customs and Border Protection. Information in the TSDB is also shared with "certain foreign governments." *Id.*

Plaintiff alleges placement in the TSDB results in (1) the individual being subjected to "enhanced screening" at the airport; (2) the government collecting an "encounter package" during each encounter with law enforcement or the TSA, including personal information, information about items in the individual's possession, financial information, and copies of electronic devices and data; and (3) the potential that the individual may be subject to a "temporary, threat-based expedited upgrade" to being placed on the No-Fly List based on "the identification of a category of individuals who may be used to conduct an act of

domestic or international terrorism, irrespective of
individualized suspicion." *Id.* at ¶ 15.

Under procedures in place at the time Plaintiff initiated
this action, individuals placed on the No-Fly List (including
Plaintiff) were not given notice that they were on the List, were
not advised of the factual basis for placement on the List, and
did not have the right to a hearing before a neutral decision-
maker to challenge their placement on the List.

Individuals who wished to challenge their placement on the
List could submit an inquiry to DHS TRIP together with any
information that the individual believed could be relevant to his
placement on the List. DHS TRIP then transmitted the inquiry to
the TSC, which determined whether any action should be taken.
Subject to judicial review, TSC was the final arbiter of whether
an individual was removed from the List. After DHS TRIP and TSC
completed their respective assessments, DHS TRIP sent a letter to
the individual that advised any necessary changes had been made,
but DHS TRIP did not inform the individual whether they were (or
ever had been) in the TSDB, on the No-Fly List, or on any of the
other sublists and did not state whether the individual had been
removed from any of the lists or the TSDB.

Although the DHS TRIP procedures have changed as they relate
to United States citizens and lawful permanent residents
(collectively referred to as U.S. Persons) who are on the No-Fly

List and have been denied boarding an aircraft, Plaintiff alleges the DHS TRIP procedures remain unchanged for those who are in the TSDB but not on the No-Fly List.

On June 24, 2014, during the pendency of this matter, this Court held in *Latif v. Holder* that Defendants'[1] prior DHS TRIP procedures were constitutionally insufficient. 28 F. Supp. 3d 1134 (2014). As a result of the Court's Opinion and Order in *Latif*, Defendants revised DHS TRIP procedures as follows:

If a U.S. Person is not allowed to board a commercial flight, that individual may submit an inquiry to DHS TRIP. If DHS TRIP verifies the individual is on the No-Fly List, then DHS TRIP will send a letter notifying the individual of her or his status on the No-Fly List and providing the individual with the option to receive and/or to submit additional information. If the traveler elects to receive additional information, DHS TRIP will provide a second letter with additional information that includes the specific criteria under which the individual has been placed on the List and an unclassified summary of the information that supports the individual's placement on the No-Fly List to the extent feasible in light of national-security and law-enforcement interests. The amount of information provided to the individual varies on a case-by-case basis. DHS TRIP will

---

[1] Defendants in this case were also defendants in *Latif v. Holder*.

provide the unclassified summary of the reasons for placement on the No-Fly List if the national-security and law-enforcement interests at stake make doing so feasible.

The second letter sent by DHS TRIP will include an invitation for the individual to submit written responses that may include exhibits or other materials that the individual deems relevant. The Administrator of the Transportation Security Administration (TSA) or his designee will review the individual's submission together with all information that the government relies on to maintain the individual's placement on the No-Fly List. TSA will then provide the individual with a final written determination, including the basis for the decision (to the extent feasible in light of the national-security and law-enforcement interests at stake), and will notify the individual of his ability to seek further judicial review.

## II. **Plaintiff's Inclusion on the No-Fly List and in the TSDB**

Plaintiff, an American citizen of Libyan descent, has lived in the United States for 42 years, became a United States citizen in 2006, is a resident of Oregon, and is married with four children. Plaintiff alleges he is "not a terrorist, and has never been engaged in conduct constituting, in preparation for, in aid of or otherwise related to terrorism or terrorist activities." Fourth Am. Compl. (#141) at ¶ 18.

Since the 1980s Plaintiff has considered himself an opponent of Muammar Gaddafi's now-deposed regime in Libya. In the wake of the revolution in Libya overthrowing the Gaddafi regime, Plaintiff traveled to Libya three times in 2011 and early 2012 as a volunteer with Medical Teams International (MTI), a nongovernmental organization based in Tigard, Oregon. While in Libya Plaintiff provided cultural, language, and logistical assistance to MTI by helping to deliver medicine, medical equipment, and supplies to Libya. During these trips Plaintiff often worked with Libyan and Tunisian government and humanitarian organizations, including Tunisia Red Crescent. Plaintiff visited and worked at refugee camps in Tunisia for Libyans fleeing violence and helped bring American nurses into Libya through Egypt.

Near the end of his third and final trip to Libya with MTI, Plaintiff arranged to return to Portland on January 17, 2012. When Plaintiff checked in for his flights from Tunis, Tunisia, to Portland on January 17, 2012, he was denied boarding. Plaintiff met with the manager of the Air France office in Tunis who showed Plaintiff three emails from the Air France office in Paris that indicated American authorities instructed Air France to deny Plaintiff boarding. The Air France officials referred Plaintiff to the United States Embassy for further information.

Plaintiff contacted the United States Embassy in Tunis. Embassy personnel asked Plaintiff to come to the Embassy in Tunis on January 24, 2012, to meet with undisclosed United States agency personnel.

On January 24, 2012, Plaintiff arrived at the American Embassy in Tunis with a Tunisian attorney and was met by Brian Zinn, an FBI Agent from Portland, Oregon, and another individual who was identified as the head of Embassy Security. Agent Zinn escorted Plaintiff to an interview room in which another FBI agent, Horace Thomas, was also present. Agent Zinn advised Plaintiff that he and Thomas were there to discuss "derogatory contacts" that Plaintiff made during his work in Libya.

Agent Zinn interviewed Plaintiff in the presence of Plaintiff's Tunisian attorney for "several" hours as to his activities in Libya; the names of people he worked with; his views on terrorist organizations; whether he had contacts with any terrorist, mujahideen, or Islamist groups; whether he had knowledge of any planned attack on the United States or its allies; and his religious views and practices.

During a break in the interview Agent Zinn told Plaintiff that he would be permitted to return to the United States if he passed a polygraph test. Plaintiff agreed to take the test. When another FBI agent asked Plaintiff to waive his constitutional rights before taking the test, however, Plaintiff

refused after consulting by telephone with his American attorney, and the interview was ended.

On February 13, 2012, Plaintiff returned to the United States by air after making arrangements to do so with United States personnel at the Embassy in Tunis and Plaintiff's American counsel. Plaintiff, however, remained on the No-Fly List and remained unable to board a commercial aircraft after his return to the United States.

Although Plaintiff was never asked to become an informant for the FBI, Plaintiff alleges he believes he was put on the No-Fly List as part of an effort by Agent Zinn to coerce Plaintiff into becoming an informant related to activities at the Masjid As-Saber Mosque where Plaintiff worships in Portland. Plaintiff bases this belief on Agent Zinn's participation in his interview in Tunis and follow-up contacts in Portland as well as allegations by two other members of the Masjid As-Saber Mosque that they were asked to become informants in exchange for their removal from the No-Fly List.

In 2013 Plaintiff submitted a DHS TRIP inquiry seeking review of his placement on the No-Fly List. Consistent with procedures in place at that time Plaintiff received a letter from DHS TRIP on July 25, 2013, advising him that DHS "'conducted a review of any applicable records in consultation with other

federal agencies, as appropriate.  It has been determined that no changes or conditions are warranted at this time.'"

Following the Court's ruling in *Latif* the Court entered its Case-Management Order (#79) issued October 3, 2014, and directed Defendants in this case to reconsider Plaintiff's DHS TRIP inquiry under the newly-promulgated procedures.

By letter dated November 24, 2014, Defendants notified Plaintiff that he remained on the No-Fly List because Defendants identified Plaintiff as an "individual who 'may be a threat to civil aviation or national security'" and specifically noted Plaintiff is "an individual who represents a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so."  As to the unclassified summary of reasons for Plaintiff's placement on the No-Fly List, Defendants informed Plaintiff that "[t]he Government has concerns about the nature and purpose of Jamal Tarhuni's travel to Libya in 2011 and 2012."  The letter invited Plaintiff to provide any responsive information no later than December 15, 2014.

After obtaining an extension of the deadline to submit responsive materials, Plaintiff provided a written response to Defendants by letter dated January 23, 2015, regarding their asserted reasons for placing Plaintiff on the No-Fly List.  On February 23, 2015, Defendants advised Plaintiff that he had been

removed from the No-Fly List "based on the totality of available information, including your submissions to DHS TRIP."

III. **Ongoing Effects of Plaintiff's Placement on the No-Fly List and/or in the TSDB**

Although Plaintiff has been removed from the No-Fly List, he alleges his placement in the TSDB continues to burden his ability to travel. Plaintiff alleges he experiences "delays and enhanced security measures every time he goes to the airport." Fourth Am. Compl. (#141) at ¶ 58. For example, when Plaintiff dropped his 14-year-old son off at the airport on April 14, 2016, Plaintiff was not permitted to accompany his son to the gate. *Id.* On January 9 and 13, 2017, when Plaintiff flew between Portland and Seattle for work, he was delayed "for an extended period" at the airline check-in counter, was issued a boarding pass marked "SSSS," and was subjected to additional screening and questioning both at the TSA screening checkpoint and at the gate before he was permitted to board. *Id.* at ¶ 59. Similarly, when Plaintiff and his family traveled to San Jose, California, the following month, Plaintiff was again subjected to enhanced screening and questioning at the TSA checkpoint and at the gate. On his return flight he was also "followed in an intimidating manner from the checkpoint to his gate by five TSA agents." *Id.* at ¶ 60. Plaintiff alleges he no longer travels with his wife and son because TSA agents discussed subjecting them to additional screening during that San Jose trip. *Id.* at ¶ 61.

13 - OPINION AND ORDER

## IV.  **Procedural Background and Plaintiff's Current Claims for Relief**

After Plaintiff was removed from the No-Fly List, Defendants moved to dismiss this action as moot.  Because at that time Plaintiff only sought injunctive relief related to his removal from the No-Fly list, the Court granted Defendants' Motion and dismissed this case as moot.

On appeal the Ninth Circuit reversed and remanded, surmising Plaintiff may be able to obtain the additional relief of removal from the TSDB even though he did not seek that form of relief before this Court.  *See Tarhuni v. Sessions*, 692 F. App'x 477 (9th Cir. 2017).  On remand Plaintiff filed a Motion (#132) for Leave to Amend Complaint in which he sought to re-plead claims against the Official-Capacity Defendants and to re-introduce previously abandoned claims against Agent Zinn in his individual capacity.  The Court granted Plaintiff's Motion in part as to his claims against the Official-Capacity Defendants, but denied in part Plaintiff's Motion as to his proposed claim against Agent Zinn.  *See* Opin. and Order (#139)(issued Jan. 23, 2018).

Plaintiff filed his Fourth Amended Complaint on February 12, 2018 in which he brings four claims.  In Claim One Plaintiff asserts his original inclusion on the No-Fly List violated his rights to substantive due process and that his removal from the TSDB as a whole is necessary to fully redress the injury caused by that violation.  In Claim Two Plaintiff asserts the redress

14 - OPINION AND ORDER

procedures for challenging his placement in the TSDB violate his rights to procedural due process. Plaintiff brings Claim Three under the Administrative Procedure Act (APA) (5 U.S.C. §§ 702, 706(2)(A)) on the basis that the DHS TRIP procedures pertaining to an individual who is placed in the TSDB are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance of law in light of the Congressional direction for the Executive Branch to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system." 49 U.S.C. § 44903(j)(2)(C)(iii)(I). Finally, Plaintiff brings Claim Four under the APA on primarily the same basis as Claims One and Two; *i.e.*, Defendants' actions in originally placing Plaintiff on the No-Fly List violate his rights to substantive due process and the DHS TRIP procedures related to contesting Plaintiff's placement in the TSDB violate his rights to procedural due process.

## STANDARDS

Defendants move to dismiss Plaintiff's Fourth Amended Complaint primarily on the basis that Plaintiff fails to state a claim and, therefore, the Court should dismiss Plaintiff's Fourth

15 - OPINION AND ORDER

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Some of the arguments in Defendants' Motion, however, also raise jurisdictional matters that may implicate dismissal pursuant to Rule 12(b)(1).

## I.   <u>Motion to Dismiss under Rule 12(b)(6)</u>

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). *See also CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.*, 880 F.3d 1048, 1061 (9th Cir. 2018). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). *See also Twombly,* 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. When a plaintiff's complaint pleads facts that are "merely consistent with" a defendant's liability, the plaintiff's complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557 (brackets omitted).

The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Novak v.*

*U.S.*, 795 F.3d 1012, 1017 (9th Cir. 2015). *See also Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). *See also* Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). *See also Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1332 (2015). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly,* 550 U.S. at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted). Under Federal Rule of Evidence 201 "a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). In addition, a court "may consider a writing referenced in a complaint but not explicitly incorporated therein

if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted). *See also Dowers v. Nationstar Mortg., LLC,* 852 F.3d 964, 967 (9th Cir. 2017).

## II.  <u>Motion to Dismiss under Rule 12(b)(1)</u>

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court may consider allegations of jurisdictional facts by affidavits and other evidence and resolve factual disputes when necessary. *Young v. United States*, 769 F.3d 1047, 1047 (9th Cir. 2014).  The court may permit discovery to determine whether it has jurisdiction when "a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).  The court has broad discretion in granting discovery and may narrowly define the limits of such discovery. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  When a court receives only written submissions, "the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand a motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)(quoting *CollegeSource, Inc. v. AcademyOn, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011)). Plaintiff bears the burden to establish that the court has subject-matter jurisdiction. *Id.* at 1068.

**DISCUSSION**

As noted, Defendants move to dismiss each of the claims in Plaintiff's Fourth Amended Complaint.

## I.  Claim One – Substantive Due Process

In Claim One Plaintiff contends Defendants' actions in placing him on the No-Fly List violated his rights to substantive due process and asserts he must be removed entirely from the TSDB in order to redress fully the violation of Plaintiff's substantive due-process rights.  The Court emphasizes Plaintiff has not pleaded in his Fourth Amended Complaint that Defendants violated his rights to substantive due process by placing him in the TSDB.  Instead Plaintiff asserts Defendants violated his substantive due-process rights by placing him on the No-Fly List and that the Court must order his removal from the TSDB to remedy fully the injuries caused by that violation.

Defendants overriding argument is that this Court should dismiss Plaintiff's substantive due-process claim because Plaintiff's placement within the TSDB[2] has not deprived him of any "fundamental right" as required to establish any substantive due-process violation.  In particular, Defendants contend inclusion in the TSDB does not result in a burden sufficient to

_____

[2] Defendants neither confirm nor deny that Plaintiff remains in the TSDB.  Instead, for purposes of this Motion only, Defendants assume Plaintiff remains in the TSDB.  At this stage of the proceedings, therefore, the Court also assumes Plaintiff remains in the TSDB as alleged in his Fourth Amended Complaint.

maintain a substantive due-process claim. *See Washington v. Glucksberg*, 521 U.S. 702, 720-22 (1997)(observing substantive due process protects "fundamental rights found to be deeply rooted in our legal tradition"). *See also Beydoun v. Sessions*, 871 F.3d 459, 467-68 (6th Cir. 2017)(holding placement on the Selectee List and resulting additional screening and delays at the airport did not sufficiently deprive the plaintiff of a fundamental right to maintain a substantive due-process claim).

If Plaintiff asserted a substantive due-process claim on the basis of his placement in the TSDB, the Court would agree with Defendants and the analysis of the Sixth Circuit in *Beydoun* and conclude Plaintiff would not have sufficiently alleged a deprivation of a fundamental right to sustain a substantive due-process claim. As noted, however, Plaintiff seeks removal from the TSDB only as a remedy that stems from his claim that his prior placement on the No-Fly List violated substantive due process.

As this Court found in its March 26, 2014, Opinion and Order (#49), the right to international travel is a right protected by substantive due process and placement on the No-Fly List without sufficient justification constitutes a deprivation of that right sufficient to state a claim. *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1271-72 (D. Or. 2014). In its Opinion and Order the Court noted even though the Ninth Circuit concluded the right to

international travel was a fundamental right that was cognizable under substantive due process, the Ninth Circuit panel expressed three different opinions about which level of scrutiny applied in the context of the deprivation of the right to travel internationally. *Id.* at 1270 (citing *Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002)). As this Court found in March 2014, however, it is not necessary to decide at this stage of the proceedings the level of scrutiny that applies because "Plaintiff plausibly alleges his placement on the No-Fly List as a citizen who has never engaged in activities related to terrorism and who does not pose a security threat to commercial aviation violates even the most deferential review standard under substantive due process." *Tarhuni*, 8 F. Supp. 3d at 1271.

As the Ninth Circuit suggested in its remand order, Defendant relies on *Ibrahim v. Department of Homeland Security*, 62 F. Supp. 3d 909 (N.D. Cal. 2014), for the proposition that removal from "all government watchlists" can be an appropriate remedy when an individual is unconstitutionally placed on the No-Fly List. *See* Pl.'s Resp. (#150) at 11-13. According to Plaintiff, therefore, removal from the TSDB remains effective relief that this Court may order to remedy his initial placement on the No-Fly List.

Plaintiff, however, overstates the Northern District of California's order in *Ibrahim*. In that case the plaintiff was

placed on the No-Fly List in 2004 as a result of a mistake an FBI
Special Agent made in completing a nomination form. *Id.* at 916.
The Special Agent intended to nominate Dr. Ibrahim to the TSDB
and various other sublists, but not to the No-Fly List. *Id.*
Over the next several years Dr. Ibrahim, a Malaysian citizen who
had been studying architecture in the United States, experienced
various adverse effects of her placement on the No-Fly List,
including denial of boarding on a flight and revocation of
her student visa. *Id.* at 917-27. From 2004 through 2009
Dr. Ibrahim's status within the TSDB and on various sublists
changed numerous times for reasons that were not always clear.
*Id.* at 917-27. By the time her case went to trial in December
2013 the government conceded Dr. Ibrahim "is not a threat to our
national security" and "does not pose (and has not posed) a
threat of committing an act of international or domestic
terrorism with respect to an aircraft, a threat to passenger or
civil aviation security, or a threat of domestic terrorism." *Id.*
at 916-17. Nonetheless, at the time of trial Dr. Ibrahim
"remain[ed] in the TSDB pursuant to a classified and secret
exception to the reasonable suspicion standard" and had not been
granted a visa to return to the United States. *Id.* at 926.

In assessing Dr. Ibrahim's due-process claim, the court
found:

> Since her erroneous placement on the no-fly list,
> plaintiff has endured a litany of troubles in getting

back into the United States. Whether true or not, she reasonably suspects that those troubles are traceable to the original wrong that placed her on the no-fly list. Once derogatory information is posted to the TSDB, it can propagate extensively through the government's interlocking complex of databases, like a bad credit report that will never go away. As a post-deprivation remedy, therefore, due process requires, and this order requires, that the government remediate its wrong by cleansing and/or correcting all of its lists and records of the mistaken 2004 derogatory designation and by certifying that such cleansing and/or correction has been accurately done as to every single government watchlist and database. This will not implicate classified information in any way but will give plaintiff assurance that, going forward, her troubles in returning to the United States, if they continue, are unaffected by the original wrong.

*Id.* at 928. Notably, the court did not explicitly order the government to remove Dr. Ibrahim from the TSDB. Instead the court required the government to disregard the designations in the November 2004 form "for all purposes" and to "trace through each agency database employing the TSDB and TIDE and make sure the correction or deletion has actually been made." *Id.* at 929. The court also observed "[t]he government is always free to make a new nomination doing it the right way." *Id.*

The foundational premise that the court's order in *Ibrahim* was built on, therefore, was that Dr. Ibrahim was entitled to a complete remedy of the initial injury; *i.e.,* the erroneous November 2004 nomination. To the extent that there were reasons unrelated to the November 2004 nomination to maintain Dr. Ibrahim in the TSDB or on any other watchlist, the order in *Ibrahim* did

23 - OPINION AND ORDER

nothing to compel the government to alter any such designations. Although removal from the TSDB could conceivably spring from the *Ibrahim* court's order, the court's direction to the government itself was more narrowly tailored than Plaintiff acknowledges. Nonetheless, the Court agrees *Ibrahim* supports Plaintiff's position insofar as it is an example of the possibility that an unconstitutional nomination to a TSDB sublist can have consequences that extend beyond the plaintiff's presence on that sublist. In particular, this Court agrees with the *Ibrahim* court's holding that in such circumstances a plaintiff would be entitled to a remedy that would completely redress that injury even if that relief reaches beyond the particular sublist to which the plaintiff was erroneously nominated in the first place.

As noted, the Court concludes Plaintiff has adequately pleaded his placement on the No-Fly List violated his substantive due-process rights. Although Plaintiff has since been removed from the No-Fly List (like Dr. Ibrahim was), it is, nonetheless, possible that Defendants' allegedly illegal actions still bear a causal relationship to Plaintiff's continued presence in the TSDB and the consequential impediments to travel that he continues to experience. Although Plaintiff's allegations as to this causal connection are sparse, the Court finds Plaintiff's pleadings to be adequate at this stage of the proceedings in light of the inherently opaque nature of the process for nominating an

individual to the TSDB and its sublists.  Going forward, however,
Plaintiff will have to establish the elements of his substantive
due-process claim and also will have to demonstrate the causal
connection between his initial, allegedly unconstitutional
placement on the No-Fly List and the ongoing ill effects that
allegedly flow from his continued presence in the TSDB.

Accordingly, on this record the Court concludes Plaintiff
has adequately pleaded his substantive due-process claim in Claim
One and has established there remains a possible remedy to the
ongoing injuries that flow from that alleged violation.
Defendants' Motion as to Claim One, therefore, is denied.

## II.  **Claim Two - Procedural Due Process**

As noted, in Claim Two Plaintiff asserts the DHS TRIP
procedures that allow Plaintiff to challenge his placement within
the TSDB violate his procedural due process rights.  Unlike his
substantive due-process claim, which focused on his original
placement on the No-Fly List, Plaintiff's procedural due-process
claim is focused on the procedures provided to challenge his
ongoing placement within the TSDB.

"Procedural due process imposes constraints on governmental
decisions which deprive individuals of 'liberty' or 'property'
interests within the meaning of the Due Process Clause of the
Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S.
319, 332 (1976).  "The fundamental requirement of due process is

the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Due process, however, "'is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The court must weigh three factors when evaluating the sufficiency of procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

### A.   Private Interest

Plaintiff alleges in his Fourth Amended Complaint that he has been deprived of two liberty interests: the right to travel both internationally and domestically and the right to be free from false government stigmatization. Defendants contend Plaintiff has not alleged a sufficient deprivation of those liberty interests to maintain his procedural due-process claim.

### 1.   Right to Travel

The parties agree the rights to both interstate and international travel are protected by the United States

Constitution and the deprivation of those interests could, in theory, give rise to a procedural due-process claim. Defendants, however, contend Plaintiff's alleged placement in the TSDB cannot support a procedural due-process claim because the alleged consequences, including enhanced screening and questioning, do not amount to a deprivation of Plaintiff's right to travel. In particular, Defendants rely on two cases from the Eastern District of Michigan in which that court found placement in the TSDB or on the Selectee List and the resulting additional screening and questioning at airports does not constitute the deprivation of a liberty interest under procedural due process because it does not prohibit or sufficiently burden the plaintiff's right to travel. *See Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240, at *5-*8 (E.D. Mich. Aug. 30, 2016). *See also Beydoun v. Lynch*, No. 14-cv-13812, 2016 WL 3753561, at *4-*5 (E.D. Mich. July 14, 2016).

Plaintiff, on the other hand, relies on *Elhady v. Piehota*, No. 1:16-cv-375 (AJT/JFA), 2017 WL 8784456, at *5-*6 (E.D. Va. Sept. 5, 2017), in which the Eastern District of Virginia reached the opposite conclusion and allowed a plaintiff's procedural due-process claim to go forward on the basis of impediments to travel caused by placement in the TSDB. The *Elhady* court distinguished *Beydoun* on the basis that the plaintiff in *Elhady* alleged placement on the Selectee List had

deterred him from flying, and that allegation was sufficient to state a procedural due-process claim on the basis of the deprivation of the plaintiff's right to travel. *Id.* In contrast, the plaintiff in *Beydoun* did not make such an allegation. *Id.*, at *5.

When discussing the right to travel as protected by the Constitution, the Ninth Circuit has emphasized "the Constitution does not guarantee the right to travel by any particular form of transportation." *Gilmore v. Gonzalez*, 435 F.3d 1125, 1136 (9th Cir. 2006). As this Court has observed in the context of the constitutionally-protected right to international travel, however, deprivation of the right to travel by commercial airline can give rise to a procedural due-process claim because travel by commercial airline is effectively the only mode of transportation reasonably available for travel to much of the world. *Latif v. Holder*, 28 F. Supp. 3d 1134, 1148 (D. Or. 2014). *See also Tarhuni*, 8 F. Supp. 3d at 1273. Although burdens on an individual's ability to fly on commercial airlines may not deprive an individual of his or her right to interstate travel in the same manner as international travel, the Court adheres to its rulings in *Latif* and previously in this case because Plaintiff's claim implicates both the rights to interstate travel and international travel, and, therefore, government action that

deprives Plaintiff of his ability to fly on commercial airlines is subject to procedural due-process scrutiny.

Unlike in *Latif* and the previous allegations in this case related to the No-Fly List, however, Plaintiff's presence in the TSDB does not carry with it a blanket prohibition on flying via commercial airlines. If Plaintiff's allegations were limited to the more thorough screening and questioning that the *Beydoun* court addressed, the Court would find Plaintiff has not pleaded the deprivation of a liberty interest sufficient to give rise to a procedural due-process claim.[3] Although such additional screening and questioning can cause inconvenience, delays, and even potentially embarrassing situations, they are not a sufficient deprivation of the liberty interest in travel to give rise to a procedural due-process claim as long as such additional measures do not unreasonably delay a traveler.

Plaintiff, however, also alleges when a individual is placed in the TSDB,

> *each* "encounter" with law enforcement, *including the TSA*, involves collection of an "encounter package" of information including sensitive personal information like the individual's prescription information, anything that is in her [*sic*] or her pockets or wallet, financial

---

[3] Moreover, in light of the focus of the first *Mathews* factor on the government's actions in depriving an individual of a protected liberty interest, the Court is skeptical of the *Elhady* court's apparent finding that a plaintiff's subjective feelings of being deterred from traveling is sufficient to establish the deprivation of a protected liberty interest.

> information like bank account numbers, copies of
> their electronic devices, including cell phone
> contact lists, laptop images, GPS data, photos on
> their camera, among other categories of
> information.

Fourth Am. Compl. (#141) at ¶ 15 (emphasis added). Although
Plaintiff does not reference the collection of bank-account
numbers, copies of electronic devices, cell-phone contact lists,
laptop images, GPS data, or photos on his camera when he
discusses the particular burdens he was exposed to when flying,
at this stage of the proceedings the Court is required to infer
that Plaintiff has personally experienced such searches from
Plaintiff's allegation that the "encounter package" is collected
at "each 'encounter' with law enforcement, including the TSA."
Unlike the additional airport-security screening and questioning
at issue in *Beydoun*, the collection of such an encounter package
is far beyond merely a more thorough version of the airport
screening to which every traveler must submit and encroaches into
numerous areas of privacy that are not ordinarily subject to
inspection at the airport. Depending upon the particular facts
of a case, the collection of such an "encounter package" by the
TSA, as alleged by Plaintiff, could constitute such a significant
intrusion into a traveler's privacy that the Court concludes it
is a sufficient deprivation of Plaintiff's liberty interest in
travel to warrant procedural due-process protection.

Defendants challenge this conclusion in three ways. First, Defendants contend Plaintiff's allegation regarding the collection of encounter packages by TSA agents during airport screening is incorrect. Defendants rely on the September 5, 2007, congressional testimony of then-Secretary of Homeland Security Michael Chertoff[4] and a July 12, 2017, Department of Homeland Security Privacy Impact Assessment for Secure Flight[5] for the proposition that TSA policy limits TSA's collection of information to basic biographical information. The authorities Defendants rely on, however, only speak to the types of information collected by TSA generally and do not address the particular procedures followed or information collected during the enhanced screening of individuals in the TSDB. Thus, even if the Court could take judicial notice of the matters cited in Defendants' authorities at this stage of the proceedings, those authorities would not negate Plaintiff's allegation concerning the collection of an encounter package, which the Court must otherwise accept as true for purposes of Defendants' Motion to Dismiss.

---

[4] Testimony of Secretary Michael Chertoff Before the House Committee on Homeland Security, 2007 WL 2507839 (Sept. 5, 2007).

[5] Dep't of Homeland Sec., *Privacy Impact Assessment Update for Secure Flight* (July 12, 2017), *available at* https://www.dhs.gov/sites/default/files/publications/pia_tsa_secu reflight_18%28h%29_july2017.pdf.

Second, Defendants contend Plaintiff's allegations do not establish TSA agents collected an encounter package from Plaintiff during any airport security screening. The Court disagrees. Although, as noted, the vagueness of Plaintiff's allegations give the Court some pause, the Court notes Plaintiff alleges TSA agents collect an encounter package "each" time an individual on the TSDB encounters TSA. Fourth Am. Compl. (#141) at ¶ 15. Because Plaintiff also alleges he has encountered TSA during airport security screenings on multiple occasions since being placed on the TSDB, at this stage of the proceedings the Court must infer TSA agents collected an encounter package from Plaintiff during each such encounter.

Finally, Defendants contend the collection of an encounter package is not relevant to this Court's analysis regarding Plaintiff's right to travel even though the collection of an encounter package may implicate Plaintiff's right to privacy. The Court disagrees. The collection of an encounter package as alleged in Plaintiff's Fourth Amended Complaint may deter an individual from traveling by commercial airline in such a way that it represents a significant burden on an individual's right to travel. In other words, the allegations lead to an inference that individuals forced to turn over to the government a wide range of deeply personal information every time they fly on a commercial airline will be less likely to exercise their

right to travel. The collection of an encounter package by TSA agents during the airport security screening of individuals on the TSDB, therefore, is relevant to whether placement on the TSDB deprives such individuals of their right to travel.

Accordingly, on this record the Court concludes Plaintiff has adequately pleaded at this stage that Defendants deprived him of his liberty interest in travel to an extent that gives rise to a procedural due-process claim.

### 2. False Government Stigmatization

On the other hand, the Court concludes Plaintiff has not sufficiently pleaded a claim under procedural due-process for deprivation of Plaintiff's right to be free from false government stigmatization. The Court notes it previously dismissed Plaintiff's "stigma-plus" claim in its March 24, 2014, Opinion and Order on the basis that Plaintiff did not adequately plead the government made a public disclosure of Plaintiff's then-status on the No-Fly List. *See Tarhuni*, 8 F. Supp. 3d at 1273-75.

In the Court's March 24, 2014, Opinion and Order, the Court found there were four elements to a "stigma-plus" claim: (1) the public disclosure by the government, (2) of a stigmatizing statement, (3) the accuracy of which is contested, plus (4) the denial of "'some more tangible interest[] such as employment.'" *Id.* at 1273 (quoting *Ulrich v. City and Cty. of*

*San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002)). In deciding

that Motion to Dismiss, the Court found:

> For purposes of this Motion, three of the four
> requirements for a cognizable "stigma plus" claim are
> easily determined. First, there is unquestionably a
> significant stigma attached to placement on the No-Fly
> List. Indeed, it is difficult to conceive of a more
> stigmatizing status than being suspected of involvement
> with terrorist activity. Second, at this stage of the
> proceedings Plaintiff's allegations that he is not
> involved in terrorist activity and does not pose a
> security threat to commercial aviation sufficiently
> contests the accuracy of the alleged stigmatization.
> Third, as noted, Plaintiff's placement on the No-Fly
> List deprives him of his right to international travel
> by air, which satisfies the "plus" element. *See Latif*,
> 969 F. Supp. 2d at 1304-05. As currently pled,
> however, Plaintiff's allegations fall short of
> satisfying the fourth element of public disclosure,
> which requires that the defendant "actually disseminate
> the stigmatizing comments in a way that would reach . .
> . the community at large." *Palka v. Shelton*, 623 F.3d
> 447, 454 (7th Cir. 2010). Disclosures to other
> government agencies or to an opposing litigating party
> are not "public" for purposes of "stigma plus." *See
> Bishop v. Wood*, 426 U.S. 341, 348-49, 96 S. Ct. 2074,
> 48 L. Ed.2d 684 (1976). *See also Wenger v. Monroe,* 282
> F.3d 1068, 1074 n. 5 (9th Cir. 2002).

*Id.* at 1274. In particular, the Court found the government

disclosure of No-Fly List status to the airlines and the

additional incidental disclosures to other passengers who may

overhear or witness an individual being denied boarding were not

enough to implicate the sort of community-wide reputational

injury required for a stigma-plus claim. *Id.* at 1274-75. The

Court notes Plaintiff did not directly raise this finding as

error during his appeal, and the Court of Appeals did not address

it in its remand order.

Plaintiff's allegations with respect to his stigma-plus claim in the Fourth Amended Complaint are not materially different from those that the Court found insufficient in the Proposed Second Amended Complaint considered in its March 24, 2014, Opinion and Order. Although Plaintiff alleges he and members of his family have been asked about Plaintiff's placement on the No-Fly List by others who learned about it through "various press reports," Plaintiff does not identify any disclosure from the government that led to those press reports. To the contrary, this Court is aware through its experience in this case that media reports of Plaintiff's status on the No-Fly List have been informed by the record in these public proceedings that Plaintiff initiated and by Plaintiff's voluntary disclosures to media. *See, e.g.*, Bryan Denson, *Homeland Security removes Tigard businessman Jamal Tarhuni from no-fly list*, OregonLive (Feb. 24, 2015), http://www.oregonlive.com/tigard/index.ssf/2015/02/homeland_security_removes_tiga.html; Helen Jung, *Case of Tigard man, grounded by no-fly list, offers glimpse into secretive airport security screening*, OregonLive (Apr. 12, 2012), http://www.oregonlive.com/travel/index.ssf/2012/04/case_of_tigard_man_grounded_by.html. Otherwise, the extent of the public disclosure of Plaintiff's presence in the TSDB as alleged in the Fourth Amended Complaint is similar to Plaintiff's allegations

concerning the No-Fly List in his Proposed Second Amended
Complaint.[6]

Accordingly, the Court adheres to its March 24, 2014,
Opinion and Order and concludes Plaintiff has failed to
adequately plead a deprivation of his liberty interest in being
free from false government stigmatization.

### B.   Risk of Erroneous Deprivation

As noted, as to the second prong of the *Mathews* balancing
analysis the court must consider "the risk of erroneous
deprivation of [the liberty or property] interest through the
procedures used, and the probative value, if any, of additional
or substitute procedural safeguards."  424 U.S. at 335.

Although the Court cannot complete any final analysis of the
*Mathews* balancing at this early stage of the proceedings, the
Court concludes Plaintiff's allegations concerning the DHS TRIP
process are sufficient to establish he is plausibly entitled to
greater procedural protections regarding his ability to challenge
his placement in the TSDB.

### C.   Government's Interest

Finally, as to the third prong of the *Mathews* balancing
analysis the court must consider "the Government's interest,

---

[6] Because Plaintiff did not appeal the Court's dismissal of
the portion of his procedural due-process claim based on the
stigma-plus doctrine, the Court notes this conclusion remains law
of the case.

including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* As the Court observed in its March 26, 2014, Opinion and Order, "[u]nquestionably, 'no governmental interest is more compelling than the security of the Nation.'" *Haig v. Agee*, 453 U.S. 280, 307 (1981). Over the last three decades the security of commercial airlines has repeatedly been at the forefront of national security concerns." *Tarhuni*, 8 F. Supp. 3d at 1275-76. Nonetheless, although the Court is unable to conduct the *Mathews* analysis until the Court has a more developed record before it, the Court concludes Plaintiff has sufficiently alleged the DHS TRIP procedures that are provided to challenge continued placement in the TSDB do not strike the proper balance under the *Mathews* test.

Accordingly, on this record the Court concludes Plaintiff has sufficiently pleaded a procedural due-process claim on the basis of the government's deprivation of his right to travel as a result of his continued placement in the TSDB, and, therefore, the Court denies Defendants' Motion as to this claim. As noted, however, the Court grants Defendants' Motion as to Plaintiff's allegation that Defendants deprived him of his liberty interest in being free from false government stigmatization.

### III. **Claims Three and Four – Administrative Procedure Act**

As noted, in Claims Three and Four Plaintiff brings claims under the APA.

#### A. **Claim Three – 49 U.S.C. § 44903(j)(2)(C)(iii)(I)**

In Claim Three Plaintiff asserts the DHS TRIP procedures as applied to those individuals in the TSDB violate the Congressional direction to the Executive Branch in 49 U.S.C. § 44903(j)(2)(C)(iii)(I) and, therefore, are "arbitrary, capricious, . . . and otherwise not in accordance of law" in violation of the APA, 5 U.S.C. § 706(2)(A). Section 44903(j)(2)(C)(iii)(I) requires the Executive Branch to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system."

With respect to his placement in the TSDB, Plaintiff contends the DHS TRIP procedures do not sufficiently provide him an opportunity to "appeal such determination and correct information contained in the system." *Id.* Plaintiff's claim relying on the direction in § 44903(j)(2)(C)(iii)(I), therefore, is virtually identical to his procedural due-process claim, albeit under a statutory rather than a constitutional rule of decision.

The Court notes the Congressional mandate in § 44903(j)(2)(C)(iii) is broader than Plaintiff indicates in his Fourth Amended Complaint. Section 44903(j)(2)(C)(iii) provides:

> (iii) Requirements. – In assuming performance of the function under clause (ii), the Assistant Secretary shall-
>
>> (I) establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system;
>>
>> (II) ensure that Federal Government databases that will be used to establish the identity of a passenger under the system will not produce a large number of false positives;
>>
>> (III) establish an internal oversight board to oversee and monitor the manner in which the system is being implemented;
>>
>> (IV) establish sufficient operational safeguards to reduce the opportunities for abuse;
>>
>> (V) implement substantial security measures to protect the system from unauthorized access;
>>
>> (VI) adopt policies establishing effective oversight of the use and operation of the system; and
>> (VII) ensure that there are no specific privacy concerns with the technological architecture of the system.

For many of the same reasons as the Court found as to Plaintiff's procedural due-process claim, the Court concludes Plaintiff has adequately alleged the DHS TRIP procedures as

they relate to individuals in the TSDB do not meet the requirements of § 44903(j)(2)(C)(iii).  Because the parties have not yet meaningfully addressed the precise requirements of § 44903(j)(2)(C)(iii), the Court declines at this stage of the proceedings to determine whether § 44903(j)(2)(C)(iii) requires any greater protections than procedural due-process.

Accordingly, on this record the Court concludes Plaintiff has sufficiently alleged a claim under § 706(2)(A) on the basis that the DHS TRIP procedures as applied to individuals in the TSDB are "arbitrary, capricious, . . . and otherwise not in accordance of law" in light of the requirements of § 44903(j)(2)(C)(iii), and, therefore, the Court denies Defendants' Motion as to Claim Three.

### B.    Claim Four — APA Violation Premised on Violations of Substantive and Procedural Due Process

As noted, in Claim Four Plaintiff asserts Defendants' actions were arbitrary, capricious, or otherwise not in accordance with law in violation of the APA because Defendants' actions in originally placing him on the No-Fly List violate substantive due process and the DHS TRIP procedures related to contesting Plaintiff's placement in the TSDB violate procedural due process.  This claim merely mirrors Plaintiff's Claims One and Two.

Accordingly, the Court declines to dismiss Plaintiff's Claim Four on the same bases as it declined to dismiss Plaintiff's

Claims One and Two, and, therefore, the Court denies Defendants'
Motion as to Claim Four.


## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in
part** Defendants' Motion (#149) to Dismiss Fourth Amended
Complaint and **DISMISSES with prejudice** Plaintiff's Claim Two
insofar as it is premised on Plaintiff's alleged liberty interest
in freedom from false government stigmatization.  The Court,
however, declines to dismiss Plaintiff's Fourth Amended Complaint
in any other respect.

The Court directs Defendants to file an answer to
Plaintiff's Fourth Amended Complaint **no later than August 24,
2018.**  The Court also directs the parties to confer and to file
**no later than August 24, 2018,** a jointly proposed case-management
schedule setting out their joint or opposed proposals for
deadlines (1) to complete discovery, (2) to file dispositive
motions, and (3) to file a jointly proposed pretrial order.

IT IS SO ORDERED.

DATED this 27th day of July, 2018.


ANNA J. BROWN
United States Senior District Judge